912 So.2d 871 (2005)
The MISSISSIPPI BAR
v.
Chokwe LUMUMBA.
No. 2003-BA-02418-SCT.
Supreme Court of Mississippi.
March 17, 2005.
*875 Adam Bradley Kilgore, Michael B. Martz, and Gwendolyn G. Combs, Jackson, attorneys for appellant.
Imhotep Alkebu-Ian, Adjoa Artis Aiyetoro, Jeffrey L. Edison, attorneys for appellee.
EN BANC.
SMITH, Chief Justice, for the Court.
¶ 1. This is an appeal by the Mississippi Bar of a Complaint Tribunal decision to impose a public reprimand upon Chokwe Lumumba, an attorney licensed to practice law in Mississippi.

FACTS AND PROCEDURAL HISTORY
¶ 2. On October 17, 2001, Lumumba appeared before Leake County Circuit Judge Marcus D. Gordon for a hearing on post-trial motions in a criminal case. During the course of the hearing, Lumumba made the following statement to Judge Gordon: "Look, Judge, if we've got to pay for justice around here, I will pay for justice. I've paid other judges to try to get justice, pay you, too, if that's what is necessary." Other statements were also made to Judge Gordon. Judge Gordon cited Lumumba for contempt, fined him $500, and ordered him to serve three days in the Leake County Jail.[1]
¶ 3. Lumumba appealed the contempt citation to the Mississippi Court of Appeals, which affirmed the trial court on August 26, 2003. See Lumumba v. State, 868 So.2d 1018 (Miss.Ct.App.2003). In its decision, the Court of Appeals stated:
Lumumba's behavior was done in the presence of the court and intended to embarrass or prevent orderly administration of justice. Further, it was both disrespectful to the judge and disruptive to court proceedings. We cannot fathom any situation that would warrant such behavior. This Court finds that the statements made toward the judge about how he can better get along with lawyers in the future, about the judge's "henchmen," about being proud to be thrown out of the courtroom, and about paying the judge for justice were made to embarrass the court or impede the administration of justice. This Court finds that the statements go far beyond zealous representation of one's client, and makes a mockery of the court and its proceedings.
Id. at 1021. Lumumba spent 1 and ½ days in jail.
¶ 4. In October 2001, Jimmie Gates, a reporter for the Jackson Clarion-Ledger newspaper, interviewed Lumumba by phone concerning the contempt citation. During the interview, Lumumba told Gates that Judge Gordon "had the judicial temperament of a barbarian." Thereafter, on October 31, 2001, the Clarion-Ledger published an article which included the following:
Jackson lawyer Chokwe Lumumba is appealing a contempt charge, saying the judge who had him jailed has "the judicial *876 temperament of a barbarian." Unapologetic for the comments that landed him in hot water, Lumumba said Tuesday, "The judge was wrong."
As a result of these events, the Mississippi Bar filed a formal complaint against Lumumba with this Court, which was heard by a Complaint Tribunal on April 22, 2003.
¶ 5. The Tribunal found Lumumba had violated Rules 3.5(c), 8.4(a), and 8.4(d) of the Mississippi Rules of Professional Conduct. The Tribunal determined a public reprimand was an appropriate punishment. The Mississippi Bar disagreed and appealed to this Court, claiming the Tribunal erred by failing to find that Lumumba violated Miss. R. Prof'l Conduct 8.2(a), and further claiming that a public reprimand was not the appropriate punishment for Lumumba's conduct. Instead, the Mississippi Bar wanted Lumumba suspended from the practice of law for an unspecified period of time. The Mississippi Bar stated that the length of suspension would be left up to this Court to determine. Lumumba cross-appealed, claiming his conduct did not violate the Mississippi Rules of Professional Conduct, and further claiming that he should not receive a public reprimand.
¶ 6. We allowed the Center for Constitutional Rights to file an amicus curiae brief, urging that Lumumba's conduct did not violate the Mississippi Rules of Professional Conduct, and that Lumumba's conduct is entitled to First Amendment protection.

ANALYSIS
¶ 7. This Court has exclusive jurisdiction over all matters pertaining to attorney discipline, and is "the ultimate judge of matter[s] arising under the Rules of Discipline for the Mississippi Bar." Miss. Bar v. Thompson 797 So.2d 197, 198 (Miss.2000), quoting Broome v. Miss. Bar, 603 So.2d 349, 354 (Miss.1992). Upon appeal this Court reviews the entire record and the conclusions of the Tribunal de novo. Rule 9.4 of the Rules of Discipline for the Mississippi Bar; Broome, 603 So.2d at 353 (citing Steighner v. Miss. State Bar, 548 So.2d 1294, 1297 (Miss. 1989)). The Court may impose sanctions of either more or less severity than those imposed by the Complaint Tribunal, although deference may be given to the Tribunal's findings because of its opportunity to observe the demeanor and attitude of the witnesses. Id. (citing Miss. State Bar v. Strickland, 492 So.2d 567 (Miss.1986)). In order to be subject to discipline, an attorney must be shown by clear and convincing evidence to have violated a rule of professional conduct. Miss. Bar v. Pels, 708 So.2d 1372 (Miss.1998).
¶ 8. For clarity and order, the arguments presented are consolidated into the following three issues:
I. Did Lumumba violate Rules 3.5 and 8.4 of the Mississippi Rules of Professional Conduct?
II. Did Lumumba violate Rule 8.2 of the Mississippi Rules of Professional Conduct?
III. If Lumumba is found to have violated the Rules of Professional Conduct, what is the appropriate punishment?

I. Rules 3.5 and 8.4 of the Mississippi Rules of Professional Conduct.
¶ 9. We begin with an examination of the record to determine whether, by clear and convincing evidence, Lumumba violated Rules 3.5 and 8.4 as determined by the Tribunal.

Rule 3.5
¶ 10. Rule 3.5(c) states that "[a] lawyer shall not: . . . engage in conduct intended to disrupt a tribunal." The Tribunal unanimously found that Lumumba's statement to Judge Gordon about paying *877 for justice violated this rule. The Tribunal also found that Lumumba's other comments to Judge Gordon did not violate Rule 3.5, but were "a close call."
¶ 11. The Bar says Lumumba's comments to Judge Gordon were abusive and went beyond advocacy, and that his conduct was belligerent and theatrical. The Bar directs us to the comment to Rule 3.5 which states:
The advocate's function is to present evidence and argument so that the cause may be decided according to law. Refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants. A lawyer may stand firm against abuse by a judge but should avoid reciprocation; the judge's default is no justification for similar dereliction by an advocate. An advocate can present the cause, protect the record for subsequent review and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics.
Miss. R. Prof'l Conduct 3.5 cmt.
¶ 12. Lumumba asserts that the Bar did not prove a violation Rule 3.5(c) by clear and convincing evidence. He says he was merely trying to make a record for his client, and that Judge Gordon abruptly stopped him and ordered him from the courtroom. Lumumba further asserts that his contempt citation is no proof that he disrupted courtroom proceedings for purposes of bar discipline.
¶ 13. The amicus argues that Lumumba did not violate Rule 3.5(c), focusing on the intent requirement of the rule. Lumumba's intent, they claim, was not to disrupt the proceedings at all, but rather to engage the court and to make a record for his client. To substantiate this position, the amicus directs us to the following testimony provided by Lumumba to the Tribunal:
[W]hat I was saying to the Court is that no, just fining me is not going to stop me from raising the issues for my client.
And that's the way that I think that we're obligated to practice as lawyers. . . . [H]ere's a man that's getting ready to face life in prison . . . probably beyond his life expectancy.
So . . . on one hand, he's . . . telling me I've got to pay a fine. On the other hand, he's telling my client that he's got to spend life in prison. To me, it's more important for my client's interest to be represented, even if I've got to pay the fine. And so part of representing my client's interest is to make sure that the appropriate record was to be made.
We were in a situation [w]here not only was the judge denying our motion, but this was a judge . . . who was doing his best to close us down to get out of there, without . . . making a record. Even though at one point he relented, at the end, he was still doing the same thing.
[A]t this point . . . [w]e would have to appeal it, and we would have no further chance to make a record, unless it came back on postconviction [sic], which is something the Supreme Court has to allow you to do.
[E]ssentially what I was saying is that using the contempt power was not going to be sufficient to stop me from making a record . . . for my client.
[A] lot of times [gross miscarriages of justice] happen because records aren't made. . . . A lot of times that happened because people want to do the comfortable thing with the judge rather than sometimes challenge the judge when the judge is wrong.
[S]ometimes the judge doesn't understand what you're saying, sometimes he *878 confuses what you're saying, sometimes he may be mad about something else and ignoring what you're saying. . . . And so what you do is make sure that you are heard.
Once you are heard, then . . . more times than not, judges will turn around and step back and say, well, you know, if you've got a reasonable position.
¶ 14. Thus, it is clear that Lumumba's entire defense to the claim that he violated Rule 3.5(c), is his belief that, in order to "make a record," he had to do what he had to do. We find no indication that Lumumba seriously disputes he disrupted the proceedings.[2] Rather, he says that the disruption was not his intent. The amicus cite us to Matter of Ray, 256 Wis.2d 19, 651 N.W.2d 727 (2002), in which the Court stated:
Although [the accused attorney] interrupted the other attorneys . . . by stating, "Oh, brother," and "Oh, what crap," and continued to argue with [the judge] after he told her that her conduct was inappropriate, the referee found no violation. Although he found that she had disrupted the tribunal, he could not find evidence that she had intended such a result. Rather he perceived that she was frustrated by the entire situation and, although completely in the wrong, did not violate [Rule 3.5(c)].
Id. at 731, 733.
¶ 15. Lumumba's claim that he felt he needed to "make a record" is repeated throughout the briefs presented by Lumumba and the amicus. Lumumba characterizes the statements he made to Judge Gordon as "an exchange between the Court and Mr. Lumumba on the heels of Mr. Lumumba's attempt to make a record of the unfairness of the trial. . . ." Citing the comment to Rule 3.5(c), the amicus says it this way:
Although ordinarily "[a]n advocate can. . . protect the record for subsequent review . . . by patient firmness" . ., that was not possible for Mr. Lumumba as the judge had ordered his removal from the courtroom . . . before he could even try to protect the record.
The amicus further says that "[a]ny temporary disobedience was justified under the Rule."
¶ 16. The premise of these arguments is that Lumumba was prepared to present some matter to Judge Gordon which might be waived or lost unless immediately presented. We decline to accept this argument. Lumumba does not reveal to us any new issue or argument Judge Gordon did not allow him to present. Indeed, if Lumumba intended to raise some evidentiary or procedural issue, Judge Gordon would have been obligated to reject the argument unless the matter was raised at trial. Furthermore, if Lumumba's true purpose was to "protect the record" by presenting some new issue which could not have been raised at trial, he could easily, and certainly more thoughtfully, have presented the matter in his written motion. His verbal argument at the hearing on his post-trial motions was solely for the purpose of attempted persuasion of Judge Gordon, not "making a record."
¶ 17. The record in this case does not support the position taken by Lumumba. The hearing which took place on October 17, 2001, began with Lumumba's argument *879 on his motion for Judge Gordon to recuse. When the trial court denied the motion, Lumumba announced that he was ready to proceed with "evidence" concerning the "allegations we have made in the motion." The trial court then allowed Lumumba to proffer expected testimony and evidence regarding problems Lumumba perceived with some of the jurors. Lumumba's proffer spanned several pages of transcript, uninterrupted.
¶ 18. When Lumumba finished, the court requested case authority, but Lumumba had none. The court then allowed the State to respond, after which Lumumba was allowed an uninterrupted rebuttal. Thereafter, a short discussion took place and the court then allowed Lumumba to present still another rebuttal.
¶ 19. At the conclusion of the presentation by counsel, the trial court denied the motion, consuming five pages of transcript explaining his reasoning. Things went downhill from there. It was then that the following took place:
MR. LUMUMBA: I have another application here, Judge. The Court has denied my right to call the jurors in order to talk about the outside influences. What I would do at this time is make an application for a continuance of this motion for a new trial and for instructions to the prosecutor to provide me with the location and addresses of two people who have to do with some of the outside influences, and, there's no rule prohibiting them from testifying as to whether people know them, and, it's really no rule prohibiting a juror from testifying whether they know people, even after the verdict.
But, in any event, one would be Eric Freeman, and, the other one would be who is, interestingly enough, no longer in jail as we found out, and secondly would be Mr. Britt. So, we would be requesting that we get this information and that the hearing be continued for a sufficient amount of time for us to bring these witnesses forward to see if, in fact, as we have alleged, they have information which is helpful to the determination of this motion or any other motion which might be properly brought under the context of this motion for a new trial.
THE COURT: I am going to overrule your motion. There must be some finality to these cases. What that is, it appears to me to be entirely a fishing matter, so the final order of this Court is your motion for a new trial is overruled.
MR. LUMUMBA: Well, Judge this 
THE COURT: No additional hearing will be heard regarding your motion for new trial.
MR. LUMUMBA: Just for the record, Your Honor, it's a little more  it's a little less than a fishing expedition . . . In fact it is very focused and direct. But, the Court's resolution of the motion is not to be unexpected, given the Court's demeanor during the entire trial.
THE COURT: What do you mean by that?
MR. LUMUMBA: What I mean is that the Court didn't handle the trial fairly, is not handling the motion fairly.
THE COURT: Well, you make it very difficult to work with, Mr. Lumumba. I think I gave you a fair trial, and, certainly, anything that I did before the jury, nothing that I did 
MR. LUMUMBA: Well, let me say this Judge.
THE COURT: Just a minute, now. I'm 
MR. LUMUMBA: I have 
THE COURT: You just 
MR. LUMUMBA:  another 

*880 THE COURT:  wait just a minute.
MR. LUMUMBA: I have another 
THE COURT: I'm the Judge of this Court 
MR. LUMUMBA: I have another issue. I just want you to know I have another issue.
THE COURT: I want you to know this hearing is now over with and 
MR. LUMUMBA: Can I ask 
THE COURT: And there will be nothing else to be made of record.
MR. LUMUMBA: Can I address another issue? You don't want to hear it? You don't want the Court to hear it? It's another issue. It's not what we talked about.
THE COURT: All right. Go ahead.
MR. LUMUMBA: And, what I'm doing is offering this to you, so you can, perhaps, get along better with other lawyers in the future.
THE COURT: Well, don't you worry about 
MR. LUMUMBA: Okay. Can I finish?
THE COURT:  how I get along with lawyers.
MR. LUMUMBA: Can I finish, please?
THE COURT: You worry about how you get along with Courts.
MR. LUMUMBA: Can I finish, please?
THE COURT: No.
MR. LUMUMBA: Judge 
THE COURT: Remove him from the Courtroom.
MR. LUMUMBA: Are you going to have 
THE COURT: I am going to have you removed 
MR. LUMUMBA:  your henchmen throw me out, Judge?
THE COURT: Until you show some respect to the Court 
MR. LUMUMBA: I'm trying to show you some respect.
THE COURT: Will you remove him from the Courtroom?
MR. LUMUMBA: That's the way you've handled it the whole Court. I'm proud to be thrown out of your Courtroom.
THE COURT: All right. Just a minute. That will cost you three hundred dollars, Mr. Lumumba. Now if you want to continue 
MR. LUMUMBA: Look, Judge, if we've got to pay for justice around here, I will pay for 
THE COURT:  I will exercise my discretion 
MR. LUMUMBA:  justice.
THE COURT:  regarding a jail sentence.
MR. LUMUMBA: I've paid other judges to try to get justice, pay you, too, if that's what is necessary.
THE COURT: It will cost you $500.00. You will serve three days in the County Jail. You will start serving it immediately, for contempt of Court.
MR. LUMUMBA: No problem. Are you going to feed me? I can't get my bag?
THE COURT: Court is in recess.
(Emphasis added).
¶ 20. A careful review of this transcript clearly reveals that the "issue" Lumumba wanted to raise did not relate to his client at all, but rather was Lumumba's advice on how Judge Gordon could "get along better with other lawyers in the future." The balance of the transcript speaks for itself. The result of Lumumba's conduct was a fine and contempt of court order to serve time in jail. Then, in his testimony before the Tribunal, Lumumba stated that "just fining me is not going to stop me from raising the issues for my client." We *881 also find that Lumumba's statements to the trial judge regarding paying off judges were intended to disrupt, and in fact did disrupt, the court proceedings.
¶ 21. Since it is glaringly obvious that Lumumba's conduct violated Rule 3.5(c), it is equally as obvious to conclude that his conduct also violated Section (a) of Rule 3.5. Rule 3.5(a) states that "[a] lawyer shall not seek to influence a judge, juror, prospective juror or other official by means prohibited by law." When Judge Gordon asked to have Lumumba removed from the courtroom, Lumumba stated "[t]hat's the way you've handled it the whole Court. I'm proud to be thrown out of your Courtroom." (emphasis added). Then, when Judge Gordon advised Lumumba that he would immediately begin serving three days in the county jail for contempt of court, Lumumba tauntingly said, "[n]o problem. Are you going to feed me? I can't get my bag?" While these comments are abusive and disruptive, they are also evidence the fact that Lumumba was purposefully attempting to exert influence over Judge Gordon through intimidation. Lumumba's menacing, belligerent attitude was an unmistakable attempt to "bully" Judge Gordon into making decisions that were in accordance with Lumumba's ultimate intentions. Further, when Lumumba remarked that he was "proud to be thrown out of your courtroom," this was an unambiguous, open admission of Lumumba's lack of respect for Judge Gordon as well as the judiciary as a whole.

Rule 8.4
¶ 22. The Tribunal was correct in finding that Lumumba's conduct also violated Rule 8.4. The Mississippi Rules of Professional Conduct 8.4 states: "[i]t is professional misconduct for a lawyer to: (a) violate or attempt to violate the rules of professional conduct . . . (d) engage in conduct that is prejudicial to the administration of justice. . . ." When this Court reviews a disciplinary action from the Complaint Tribunal, the evidence is examined de novo. Rule 9.4 of the Rules of Discipline for the Mississippi Bar; Broome v. Miss. Bar, 603 So.2d 349, 353 (Miss.1992) (citing Steighner v. Miss. State Bar, 548 So.2d 1294, 1297 (Miss.1989)). Therefore, we must examine the entire record de novo and consider all of Lumumba's conduct and statements to determine if Lumumba violated Rule 8.4. It is very apparent that all of Lumumba's statements, those made in the courtroom and those to the Clarion-Ledger, are prejudicial to the administration of justice and indicates conduct which is connected to judicial proceedings.
¶ 23. The United States Supreme Court has held that conduct prejudicial to the administration of justice is synonymous with "`conduct unbecoming a member of the bar' [or] conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts." In re Snyder, 472 U.S. 634, 645, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985). See also Rogers v. Miss. Bar, 731 So.2d 1158, 1170 (Miss.1999) Similarly, the Fifth Circuit, in holding that Rule 8.4(d) was neither overly broad or vague, found that the Rule's application was consistent with the "[s]tate's primary concern... the obligation of lawyers in their quasi-official capacity as assistants to the court." Howell v. State Bar of Texas, 843 F.2d 205, 207 (5th Cir.1988). The Rule was applied in the context of preventing conduct which is detrimental to "the trial of cases in the court and their judicial determination and disposition by orderly procedure, under rules of law and putting of the judgment into effect." Id. Mississippi's application of the rule is consistent *882 with that adopted in Howell. Id. Likewise, the comment to Rule 8.4 states that "a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice." Furthermore, our case law further indicates that conduct which is prejudicial to the administration of justice is that conduct which is connected to judicial proceedings. Rogers, 731 So.2d at 1170. (emphasis added). There can be no doubt that Lumumba made this comment to a reporter knowing that it was in direct response to the reporter's question about the Payton case and specifically about Judge Gordon. Also, Lumumba appealed his contempt of court, fine and jail time which was affirmed by the Court of Appeals. He appealed this bar case to our Court. Additionally, he appealed his client Payton's case where this conduct occurred. This Court reversed and remanded Payton's case to the trial court and Judge Gordon, the very judge to whom Lumumba had made so many derogatory comments. We find that this was conduct directly related to or connected to a judicial proceeding or having a prejudicial effect thereon. See Rogers, at 1170 and Byrd v. Miss. Bar, 826 So.2d 1249, 1253 (Miss.2002).
¶ 24. Lumumba's statement and behavior in the courtroom directly affected the judicial proceeding. With regard to Rule 3.5(c), Lumumba's statement about "paying for justice," the fact that Lumumba tried to give Judge Gordon advice on "how to get along better with other lawyers in the future," and his statement about how the judge was going to have his "henchmen" throw him out clearly disrupted judicial proceedings. Henchmen are defined as "a political follower giving active support; an unscrupulous often violent member of a gang." Webster's Third New International Dictionary 1056 (1986). Thus, the use of the word henchmen by Lumumba was disrespectful, extremely inappropriate, and nothing less than an attempt to intimidate Judge Gordon. Furthermore, Lumumba's statements were clearly made in the course of the proceedings and directly affected the judicial proceedings. While the hearing was being concluded, the case was proceeding for "judicial determination and disposition" and ultimate determination on appeal by this Court. Howell, 843 F.2d at 207. Besides, it was Lumumba's claim of having another "issue" to argue that convinced Judge Gordon to allow Lumumba to continue. Thus, for argument purposes, even if the hearing had been concluded, which it was not, Judge Gordon clearly reopened the proceedings supposedly so that Lumumba could raise another legal issue. However, as the record reveals, this claim was instead a subterfuge, as Lumumba never argued a new legal issue but rather launched into another insulting comment towards Judge Gordon. The entire episode was transcribed on the record by the official court reporter. Since this Court reviews the whole record de novo, this statement about "paying for justice" and all his other conduct and statements made in the courtroom clearly violated Rule 8.4(d) in that it was prejudicial to the administration of justice and indicated a lack of those characteristics relevant to law practice.
¶ 25. Lumumba also violated Rule 8.4(d) when he made the "barbarian" comment to the Clarion-Ledger. This "barbarian" comment was simply one of many inappropriate statements that Lumumba made during the course of these proceedings. Even though this statement was made after the trial, it was a matter connected to a judicial proceeding which was ongoing and continuing towards determination and disposition, ultimately concluding on appeal to this Court. Rogers, 731 So.2d at 1170. Also, as stated previously, *883 the comments to Rule 8.4(d) state that offenses that indicate a lack of those characteristics relevant to law practice is prejudicial to the administration of justice. The "barbarian" comment definitely indicates a lack of those characteristics relevant to the practice of law and was directly related and connected to the judicial proceeding. This comment is definitely conduct unbecoming a member of the bar and conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts which the Supreme Court holds as synonymous to conduct that is prejudicial to the administration of justice. Therefore, the "barbarian" comment made to the Clarion-Ledger clearly violated Rule 8.4(d).
¶ 26. Lumumba's conduct and statements in the courtroom are not protected by the First Amendment and he may be sanctioned under Rule 8.4. The majority of state and federal courts have found First Amendment protection arguments unpersuasive because the state's interest is in protecting and defending its public officials and in maintaining a respect for the judiciary. See Charles W. Wolfram, Modern Legal Ethics, § 11.3.2, at 602-03 (1986). An attorney may not "seek refuge within his own First Amendment right of free speech to fill a courtroom with a litany of speculative accusations and insults." United States v. Cooper, 872 F.2d 1, 3 (1st Cir.1989). The basic legal reasoning in support of this position is "[l]awyers are officers of the Court and, as such, may legitimately be subject to ethical precepts that keep them from engaging in what otherwise might be constitutionally protected speech." Gentile v. State Bar of Nevada, 501 U.S. 1030, 1081-82, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991)(O'Connor, J., concurring). We agree. It is a privilege to practice law, and the principle here is that we give up many rights ordinary citizens have in order to be practicing lawyers. As officers of the Court we are required to behave in accordance to certain high standards. Lumumba has the same obligation as do all lawyers. If he had problems with Judge Gordon, there are mechanisms in place which he is required to follow to address his concerns, rather than do so in the manner he did here.
¶ 27. Likewise, Lumumba's statement that Judge Gordon has the "judicial temperament of a barbarian" is not protected by the First Amendment, and he can be sanctioned for making it under Rule 8.4. In the case of In re Holtzman, 78 N.Y.2d 184, 573 N.Y.S.2d 39, 577 N.E.2d 30 (1991), an attorney released to the media specific allegations of improper judicial conduct and the court rejected the First Amendment challenge. In the case sub judice, by Lumumba stating directly to the media that Judge Gordon has "the judicial temperament of a barbarian," he directly attacks Judge Gordon's qualifications, his impartiality, the Circuit Court of Leake County and the entire judicial system. The statement made was clearly "commented" to the Payton case. Rogers, 731 So.2d at 1170. The term barbarian is defined as "believed to be inferior to one's own", "lacking refinement, learning, artistic or literary culture", "a savage", "marked by a tendency toward brutality, violence, or lawlessness but sometime displaying a rough vigor or vitality; a race which possesses neither virtue nor humanity." Webster's Third New International Dictionary 174 (1986) (emphasis added). Thus, here, the attack is against the entire judicial system and society as a whole. Lumumba knowingly discussed this issue and made his comments to the media with full knowledge that they were looking for a headline. While Lumumba was apparently unconcerned with his statement to the media, one of his law partners obviously *884 was so concerned that he attempted to clarify the statement to the reporter on Lumumba's behalf. In the case of In Re Holtzman, the court held that "[p]rofessional misconduct, although it may directly affect an individual, is not punished for the benefit of the affected person; the wrong is against society as a whole, the preservation of a fair, impartial judicial system, and the system of justice as it has evolved for generations." 573 N.Y.S.2d at 43, 577 N.E.2d at 34. The court also held that
the issue raised when an attorney makes public a false accusation of wrongdoing by a Judge is not whether the target of the false attack has been harmed in reputation; the issue is whether that criticism adversely affects the administration of justice and adversely reflects on the attorney's judgment and, consequentially, her ability to practice law.
Id.
¶ 28. As stated above, Lumumba's statement to the Clarion-Ledger clearly affected the administration of justice and also adversely reflected on his judgment and ability to practice law. The Court, in determining whether the First Amendment provided protection for this attorney, used an objective standard. Id. "In order to adequately protect the public interest and maintain the integrity of the judicial system, there must be an objective standard of what a reasonable attorney would do in similar circumstances." Id. Lumumba's course of conduct clearly satisfies this standard and therefore is not protected by the First Amendment. Since Lumumba is not protected by the First Amendment, this Court can and will sanction him for making the "barbarian" statement to the Clarion-Ledger under Rule 8.4.

II. Did Lumumba violate Rule 8.2(a)?
¶ 29. Rule 8.2(a) prohibits a lawyer from making a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge. As mentioned previously, our review of this issue is de novo, and accordingly, we make findings of fact as well as conclusions of law. It is readily apparent that all of Lumumba's statements were, in fact, made with wilful, reckless disregard as to their truth concerning Judge Gordon's qualifications and integrity as a judge.
¶ 30. Since the applicable standard of review is de novo, this Court is not restricted to the specific issues presented on appeal, but instead, may review any and all charges against Lumumba regarding the entirety of Lumumba's comments in this disciplinary proceeding. Lumumba's statement to Judge Gordon that "I've paid other judges to try to get justice, pay you too if it's necessary," was a direct attack on the character and integrity of Judge Gordon. It is clearly a direct insinuation that Judge Gordon, among other things, is dishonest, requiring payment by Lumumba in order for justice to be had in the circuit court. "Integrity,"is defined as "an uncompromising adherence to a code of moral, artistic, or other values; avoidance of deception; the quality or state of being undivided." Webster's Third New International Dictionary 1174 (1986). Lumumba's comment suggests that justice has been for sale before in other courts and that he had bought and paid for it. He inferred that if it was for sale by Judge Gordon he would buy justice again. By expressly stating that payment for justice was a feasible option, Lumumba unequivocally and recklessly undermined Judge Gordon's judicial integrity or his moral code, ability to be unimpaired, or impartial. The repeated similar allegations of buying justice in several different courts *885 suggests that Lumumba keeps a $100 bill specifically for the purpose of theatrically demonstrating "paying for justice" when the opportunity presents itself.
¶ 31. Lumumba made numerous additional comments during the course of proceedings that constitute a continuing, wilful, reckless disregard as to their truth or falsity concerning the qualifications or integrity of a Judge Gordon. For example, when Judge Gordon denied his motion for a new trial, he said "[w]hat I mean is that the Court didn't handle the trial fairly, is not handling the motion fairly." (emphasis added.). It is undisputed that fairness is an imputed qualification for a judge, and by specifically stating otherwise in open court, Lumumba contemptuously attacked Judge Gordon's qualifications. Lumumba then claimed to desire to raise another legal issue but instead attempted to offer Judge Gordon advice on "how to get along better with other lawyers in the future," and when Judge Gordon asked to have him removed from the courtroom, Lumumba asked if the judge was going to have his "henchmen" throw him out.
¶ 32. Lumumba's aforementioned "barbarian" comment also falls under the purview and meaning of Rule 8.2. As mentioned previously, a "barbarian" is defined as "lacking refinement, gentleness, learning; tendency towards brutality, violence or lawlessness." Webster's Third New International Dictionary p. 174, 1986. Quite obviously, averring that Judge Gordon's temperament was like that of a barbarian, Lumumba wilfully and knowingly undermined the presumed integrity and qualifications of Judge Gordon. It would be impossible to have a steadfast adherence to a moral code, be unimpaired, and undivided, while also being a fierce, brutal, or cruel person. Even though being called a barbarian may not at first glance infer dishonesty, it undeniably evinces distrust as to Judge Gordon's integrity as well as his qualifications as a judge. To suggest otherwise, is an intolerable miscarriage of justice as well as condonation that incites continued patterns of egregious disrespect by some lawyers for the judiciary. Lumumba's statements and conduct clearly violated Rule 8.2.
¶ 33. Lumumba's conduct and statements in the courtroom are not protected by the First Amendment and he may be sanctioned under Rule 8.2. In Florida Bar v. Ray, 797 So.2d 556 (Fla. 2001), the court addressed conduct that violated Rule 4-8.2(a)[3] of the Rules of Professional Conduct and whether or not the First Amendment provided any protection. The court followed a long line of precedent cases, including the Holtzman case, which held that attorney misconduct is not protected under the First Amendment because the conduct was not founded on the objectively reasonable attorney standard. Id. (citing In re Holtzman, 78 N.Y.2d 184, 573 N.Y.S.2d 39, 577 N.E.2d 30 (1991)). In Ray, an attorney released letters to the media that were false allegations of misconduct that questioned the integrity of an immigration judge. Id. The Florida court held that "ethical rules that prohibit attorneys from making statements impugning the integrity of judges are not to protect judges from unpleasant or unsavory criticism. Rather, such rules are designed to preserve public confidence in the fairness and impartiality of our system of justice." Id. at 558-59. The court further stated that
[b]ecause members of the Bar are viewed by the public as having unique insights into the judicial system, the *886 state's compelling interest in preserving public confidence in the judiciary supports applying a different standard than that applicable in defamation cases. For this reason, we, like many other courts, conclude that in attorney disciplinary proceedings under rule 4-8.2(a), the standard to be applied is whether the attorney had an objectively reasonable factual basis for making the statements.
Id. Lumumba's actions and statements are clearly not those of a reasonable, objective attorney, and as such, are not protected by the First Amendment so accordingly, they are sanctionable.

III. What is the appropriate sanction for Lumumba's conduct?
¶ 34. The Complaint Tribunal ordered a public reprimand. The Mississippi Bar has appealed that decision, seeking a more severe punishment. In measuring the appropriateness of punishment of an attorney for violation of the rules of professional conduct, we look at (1) the nature of the conduct involved; (2) the need to deter similar misconduct; (3) the preservation of the dignity and reputation of the profession; (4) the protection of the public; and (5) the sanctions imposed in similar cases. See Miss. Bar v. Alexander, 669 So.2d 40, 42 (Miss.1996) (citing Miss. Bar v. Attorney R., 649 So.2d 820, 824-25 (Miss.1995)).

Nature of the conduct involved.
¶ 35. A review of the transcript leaves no reasonable doubt that Lumumba chose truculent language for the purpose of inciting anger. Such tactics are perhaps arguably understandable at times in the cross examination of a witness, but are never appropriate when addressing a court. Lumumba's duty was to his client, not to his own need to test the trial judge in a verbal battle over whether or not the trial court had been fair, and whether the trial court needed instruction in how best to get along with other lawyers among other inappropriate comments. Under the guise of "protecting the record," Lumumba abandoned his client to pursue his own interests. To compound his inappropriate motive, he chose language clearly outside the bounds of reasonable, respectful advocacy, regardless of his purpose. Furthermore, his "barbarian" comment to the Clarion-Ledger attacked the integrity of the Judge and the judiciary as a whole.

The need to deter similar misconduct.
¶ 36. This Court cannot abide conduct calculated to disrupt a tribunal and which implies that justice can be bought and sold. Were we to overlook Lumumba's conduct, we have no doubt other members of the Bar would be encouraged to exhibit less respect for the courts. If history teaches us anything in this respect, it is that our judicial system cannot function properly where there exists a pervasive lack of respect for the courts and judges. An attorney need not personally like or respect a judge or justice, but when communicating with the court, the attorney is required to show respect for the position and institution.

The preservation of the dignity and reputation of the profession.
¶ 37. No more need be said than has already been said above regarding the need to deter similar conduct.

The protection of the public.
¶ 38. Our failure to properly condemn Lumumba's conduct would result in the understandable perception that his conduct is acceptable. That, of course, would lead inescapably to others engaging in similar conduct, thereby compromising the cases of their clients. The public is *887 entitled to know that when lawyers engage in such conduct, their clients are not well served.

The sanctions imposed in similar cases.
¶ 39. Other than a previous case involving similar conduct by Lumumba, for which he was disciplined and one other reported case for which he was not sanctioned we know of no other case decided by this Court where an attorney has addressed a trial court in the manner as disrespectful and insulting as here. However, the Bar cites numerous cases in other jurisdictions in which attorneys have been disbarred, suspended and reprimanded for similar conduct. For example, in United States District Court for Eastern District of Washington v. Sandlin, 12 F.3d 861 (9th Cir.1993), an attorney was suspended from the practice of law for six months for making false statements about a trial judge in reckless disregard for their truth. Moreover, in Comm. on Legal Ethics v. Farber, 185 W.Va. 522, 408 S.E.2d 274 (1991), a lawyer was given a three-month suspension for three separate counts of misconduct and indefinite suspension (pending proof of emotional and psychological stability) because he had a "pattern and practice" of lashing at judges with reckless accusations. The attorney misrepresented facts in a motion to disqualify a circuit judge and made allegations against that judge to a special prosecutor and again falsely accused the circuit judge of criminal acts. Id. Also, in Bar Ass'n of Greater Cleveland v. Carlin, 67 Ohio St.2d 311, 423 N.E.2d 477 (1981), an attorney was suspended from the practice of law for one (1) year for persistently responding to court rulings with statements of disbelief, profanity, obscenity, disparagement of the judge and other manifestations of disrespect and discourtesy.
¶ 40. In the case of In re Evans, 801 F.2d 703 (4th Cir.1986), a lawyer was disbarred from the practice of law for reasserting charges against a judge, without investigating. The Fourth Circuit stated that the "failure to investigate, coupled with his unrelenting reassertion of the charges . . . convincingly demonstrates his lack of integrity and fitness to practice law." Id. at 706. Also, in In re Palmisano, 70 F.3d 483 (7th Cir.1995), which was a reciprocal discipline case where Palmisano was disbarred in Illinois for making blameless accusations of crime, and lesser wrongs against judges, the Seventh Circuit stated that federal courts "are no more willing to tolerate repeated, false, malicious accusations of judicial dishonesty than are state courts." Id. at 488. Likewise, in People ex. rel. Chicago Bar Ass'n v. Metzen, 291 Ill. 55, 125 N.E. 734 (1919), the court disbarred an attorney who brought suit against a trial judge for damages on account of his ruling and prepared newspaper articles gaining publicity for his suit. When a lawyer repeatedly made grossly disrespectful allegations against a judge, he was subsequently disbarred from the practice of law. In re Whiteside, 386 F.2d 805 (2d Cir.1967). Finally, in State ex rel. Nebraska State Bar Ass'n v. Michaelis, 210 Neb. 545, 316 N.W.2d 46 (1982), cert. denied and appeal dismissed, 459 U.S. 804, 103 S.Ct. 27, 74 L.Ed.2d 42 (1982), an attorney was disbarred when, while at a hearing on charges of making unfounded allegations against judges, continued his attacks, and also attacked the deciding court just prior to its decision. These cases are exemplary of a federal and state judiciary that refuses to condone or even entertain conduct by attorneys that is unprofessional or unethical.
¶ 41. We have also recognized as an important factor prior disciplinary sanctions against an attorney. See Terrell v. *888 Miss. Bar, 662 So.2d 586, 592-93 (Miss. 1995); The Miss. Bar v. Hall, 612 So.2d 1075, 1077 (Miss.1992); Haimes v. Miss. Bar, 601 So.2d 851, 853 (Miss.1992); Culpepper v. Miss. Bar, 588 So.2d 413, 421 (Miss.1991). In that regard, we are informed by the Bar that
(1) Mr. Lumumba had previously been found in contempt of Court twice in Michigan and once in New York because of actions he took while acting as trial counsel for separate, unrelated clients, though Mr. Lumumba testified the Michigan contempt citations were subsequently reversed on appeal; He had previously been issued an Informal Admonition by the Mississippi Bar's Committee on Professional Responsibility in Docket No. 97-73-1; and Mr. Lumumba was also issued a Public Reprimand by the Bar's Committee on Professional Responsibility on April 13, 2000 in Docket No. 99-208-1 when he was found to have violated the provisions of Rules 3.5(c) and 8.4(a, d and e), MRPC, for behavior similar to the conduct involved in the instant proceeding.
¶ 42. The Bar reasons that a public reprimand is insufficient, pointing out that Lumumba received a public reprimand for engaging in very similar conduct in the previously cited case, and has now repeated the offense, demonstrating the insufficiency of that sanction. We agree.
¶ 43. Lumumba's conduct, in the case sub judice, as well as his extensive history of similar misconduct, most assuredly constitutes serial misconduct. Lumumba has continued to demonstrate to the courts of this state, as well as the courts of Michigan and New York, that he does not respect the courts, judges, or justices. All of his conduct and actions, whether viewed as a whole or in part, unabashedly violate Rules 3.5, 8.2, and 8.4 of the Mississippi Rules of Professional Conduct. Here, the dissenting member of the Tribunal was absolutely correct in stating that Lumumba showed "indifference to his legal obligation to conduct himself in a professional manner." The dissenting member also noted, quite accurately, that a public reprimand would neither adequately demonstrate that this type of behavior will not be tolerated, nor serve a sufficient deterrent for Lumumba. Also, as shown by his serial, willful misconduct, a public reprimand will not serve as a deterrent for Lumumba.
¶ 44. Lumumba's flagrant refusal and self-imposed immunity to the authority of the judiciary, fellow members of the Bar, and the legal community as a whole is intolerable. One need only look at Lumumba's almost identical behavior in Glover v. Jackson State University, 755 So.2d 395 (Miss.2000), to observe that Lumumba's conduct is a continuing pattern of conduct regardless of the presiding trial judge. Lumumba's comments there caused the learned circuit judge to declare a mistrial in order for justice to prevail. In Glover, we note that he similarly treated a Hinds County Circuit Court judge who was African American in like fashion as he did Judge Gordon, referring to the trial judge as "unfair and biased", and stating further, "[y]ou know Judge, you have a selective memory, but, since you don't seem to be listening anyway, I'm going to stop talking." Lumumba made other quotes to the extent that the judge finally remarked on the record that in "most courts in this country most judges would have found him [Lumumba] in contempt." He [Lumumba] said I was "dumb." The trial judge also remarked that, "[i]n the five years that I've presided in trials and heard motions and everything else, no other lawyer has ever talked to me the way you have talked to me today, Mr. Lumumba." (emphasis added). Showing *889 remarkable restraint, the trial judge nonetheless, did not hold Lumumba in contempt. Instead, the judge believed Lumumba's conduct to be so inappropriate that he was forced to declare a mistrial and recuse himself from the case. Id. at 402-03. This behavior caused extreme hardship upon the parties, especially the defendants who did not want a mistrial. Thus, we clearly see that the issue in the case at bar is a continuing wilful pattern of unprofessional conduct by Lumumba against any judge or court, regardless of race or gender, wherein Lumumba finds himself at odds with that judge's rulings.

CONCLUSION
¶ 45. After thorough review of this record and considering all necessary analysis of the criteria set out in Miss. Bar v. Inserra, 855 So.2d 447, 450 (Miss.2003), and other factors set out herein, we conclude that it is apparent that Lumumba needs a more severe punishment than a public reprimand. To do less would be inequitable and in our view not prohibit or persuade Lumumba from engaging in similar conduct towards our trial judge in the future. For the violations of Rules 3.5, 8.2, and 8.4, Lumumba is suspended from the practice of law for six months and until he retakes and passes the Ethics portion of the Mississippi Bar Examination, fined in the amount of $1000, and required to pay all costs accrued by the Bar and costs taxed in this appeal.
¶ 46. CHOKWE LUMUMBA IS SUSPENDED FROM THE PRACTICE OF LAW FOR SIX MONTHS AND UNTIL HE RE-TAKES AND PASSES THE ETHICS PORTION OF THE MISSISSIPPI BAR EXAMINATION, FINED $1,000 WHICH IS DUE AND PAYABLE TO THE CLERK OF THIS COURT WITHIN 30 DAYS, AND PAY COSTS OF THIS APPEAL.
WALLER AND COBB, P.JJ., EASLEY, CARLSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION. DICKINSON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.
GRAVES, Justice, dissenting:
¶ 47. My dissent from the majority is three-fold. First, I disagree with the majority's decision that Chokwe Lumumba's conduct during the post-trial hearing violated Rule 8.2(a) of the Mississippi Rules of Professional Conduct. Rule 8.2(a) seeks to sanction statements of fact, not mere opinions which do little to attack the qualifications or integrity of a judge. Second, I disagree with the majority's decision that Lumumba's statements to the Clarion-Ledger violated Rule 8.4(d). While Lumumba's statements to the press do not necessarily warrant First Amendment protection, those statements, standing alone, are not violative of Rule 8.4(d). Lastly, I disagree with the severity of the sanction imposed by the majority. The majority offers little substance to suggest that Lumumba's violations of the rules warrant a suspension of six months from the practice of law and a fine of $1,000 plus costs. Under the facts before us, this is an extreme and draconian sanction which is not proportional to the particular offenses. Because of this, I am forced to respectfully dissent.

Violation of Rule 8.2(a)
¶ 48. The majority holds that Lumumba's statements made during the course of the post-trial hearing violated Rule 8.2 of the Mississippi Rules of Professional Conduct. As the majority correctly points out, Rule 8.2(a) prohibits a lawyer from making a statement that the lawyer knows to be *890 false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge. In support of its finding that Lumumba violated Rule 8.2(a), the majority turns to Lumumba's statement, "I've paid other judges to try to get justice, pay you too if it's necessary." The majority contends that this comment attacked the character of the trial judge as well as undermined his integrity. The majority also finds that other statements Lumumba made on the record come within the auspices of Rule 8.2(a), including:
Lumumba: "What I mean is that the Court didn't handle the trial fairly, is not handling the motion fairly."
Lumumba: "And what I'm doing is offering this to you, so you can, perhaps, get along better with other lawyers in the future."
¶ 49. While the above statements are irresponsible and unbefitting a member of the Bar, I cannot agree that these statements are sanctionable under Rule 8.2(a). Rule 8.2(a) deals with those statements of fact, not just mere opinions, which attack the qualifications or integrity of a judge. Considering the substance of the rule, the majority's holding is very problematic.
¶ 50. It cannot be established that any of Lumumba's statements made during the hearing qualify as statements of fact which would be sanctionable under Rule 8.2(a). Instead, Lumumba's statement that the "Court didn't handle the trial fairly," is his raw and unedited opinion concerning the events of the trial. Lumumba's statement about "getting along better with other lawyers in the future," is also completely devoid of any factual predicate. Generally, a statement of fact is of a matter whose truth can be objectively determined. There is no objective manner to assess the truthfulness of any statement Lumumba made during the post-trial hearing.
¶ 51. Rule 8.2(a) contains an actual malice standard which seemingly tracks the standard for defamation of a public figure. Where the defamed party is a public figure, such a party is prohibited from recovering damages unless that party proves that the statement was made with actual malicethat is, with knowledge that it was false or with reckless disregard of whether it was false or not. Curtis Publishing Co. v. Butts, 388 U.S. 130, 164, 87 S.Ct. 1975, 1996, 18 L.Ed.2d 1094 (1967); New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Blake v. Gannett Co., 529 So.2d 595, 600-01 (Miss.1988). However, in the instant action, Lumumba's words on their face were neither defamatory, nor violative of Rule 8.2(a) considering that no statement of fact (alleged or otherwise) was ever published concerning the trial judge's qualifications or integrity. Thus, I am compelled to dissent from the majority's holding that Lumumba's statements violated Rule 8.2(a).

Violation of Rule 8.4(d)
¶ 52. The majority holds that Lumumba's statement to the Clarion-Ledger violated Rule 8.4(d). Lumumba was quoted as saying, "[Judge Gordon] has the judicial temperament of a barbarian." Rule 8.4(d) provides that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.
¶ 53. First, at the time Lumumba made the statement to the press, the case which brought Lumumba before the trial judge (in a representative capacity) was over. Lumumba's statements to the press were not prejudicial to the administration of justice in that no judicial proceeding was ongoing. The post-trial hearing was conducted on October 17, 2001, and the Clarion-Ledger article was published on October 31, 2001. Given the span of approximately two weeks, it is difficult to *891 conclude that Lumumba's statements to the press in some way adversely affected the legal rights or interests of his client or the State. Inasmuch as the post-trial hearing had concluded prior to Lumumba's statements to the press, I cannot agree with the majority that his statements to the press were prejudicial to the administration of justice.
¶ 54. Second, the substance of Lumumba's statements rises only to the level of political hyperbole and lacks sufficient qualitative value to constitute a violation under Rule 8.4(d). Lumumba's assertion that the trial judge possessed the "judicial temperament of a barbarian" is just an opinion. There is absolutely no qualitative means available to determine whether an individual possesses the "temperament of a barbarian." Instead, Lumumba's comments to the press constitute nothing more than political hyperbole. As the majority points out, the denotation of a "barbarian" is one comparable to a savage and one who is marked by a tendency toward brutality, violence, or lawlessness. Obviously, there is no sophisticated manner to equate Lumumba's statement to the denotation of a "barbarian." Thus, without more, I cannot agree that Lumumba's words to the newspaper rise to the level of a sanctionable offense.

Severity of the Sanction Imposed
¶ 55. The Complaint Tribunal found that Lumumba's conduct before Judge Gordon as well as the statements made during the Clarion-Ledger interview violated Rules 3.5(c), 8.4(a), and 8.4(d) of the Mississippi Rules of Professional Conduct. Even after finding that three (3) separate provisions were violated, the Tribunal determined that a public reprimand was an appropriate punishment considering the circumstances. Today, the majority finds that Lumumba's violation of the rules warrants a suspension of 6 months from the practice of law and a fine of $1,000 plus costs. The majority imposes a harsher sanction than did the Tribunal while the majority finds the same number of violations as did the Tribunal. This result seems patently unfair considering that Lumumba has already served 1 and ½ days in jail and paid a fine.
¶ 56. While it is true that this Court has exclusive jurisdiction over all matters pertaining to attorney discipline and this Court is free to impose sanctions either more or less severe than those imposed by the Complaint Tribunal, deference is afforded to the Tribunal's findings because of its opportunity to observe the demeanor and attitude of the witnesses, including the attorney, which is vital in weighing evidence. Parrish v. Miss. Bar, 691 So.2d 904, 906 (Miss.1996), Broome v. Miss. Bar, 603 So.2d 349, 353 (Miss.1992) (citing Miss. State Bar Ass'n v. Strickland, 492 So.2d 567 (Miss.1986)). Also, when assessing the sanction to be imposed against an attorney in a disciplinary action, this Court applies the following nine criteria:
(1) the nature of the misconduct involved;
(2) the need to deter similar misconduct;
(3) the preservation of the dignity and reputation of the profession;
(4) the protection of the public;
(5) the sanctions imposed in similar cases;
(6) the duty violated;
(7) the lawyer's mental state;
(8) the actual or potential injury resulting from the misconduct; and
(9) the existence of aggravating or mitigating factors.
Miss. Bar v. Inserra, 855 So.2d 447, 450 (Miss.2003). The only reasoning that the majority gives for ignoring the Tribunal's recommendation of a public reprimand is that Lumumba received a public reprimand *892 once before for engaging in very similar conduct and now repeats the offense.[4] This reasoning is flawed in that the majority bases its holding on one or two of the above enumerated factors and fails to consider them holistically. In assessing sanctions for attorney misconduct, we are free to contemplate the performance of a lawyer in our deliberations. See Miss. Bar v. Coleman, 849 So.2d 867, 876 (Miss.2002) (examining conduct of attorney). We can also consider prior infractions by attorneys in imposing disciplinary measures. Byrd v. Miss. Bar, 826 So.2d 1249, 1255 (Miss.2002) (examining that attorney had been given one public reprimand, one private reprimand, and three informal admonitions in ten years when considering disbarment). However, when considering sanctions for attorney misconduct, this Court's focus should not be solely upon prior attorney misconduct, but rather, upon the factors in toto. Thus, the majority seemingly holds that a suspension of six months from the practice of law is warranted because of Lumumba's prior public reprimand. Essentially, there is no need to have a multi-factored approach to assessing sanctions for attorney misconduct if we are not going to consider each factor.
¶ 57. In considering the nature of Lumumba's misconduct, the majority states that during the exchange between Lumumba and the trial judge, Lumumba abandoned the interest of his client to pursue his own in waging a verbal battle with the trial court over whether or not the trial court had been fair. On this point, it is important to note that during the post-trial hearing, there were no other parties, attorneys, or witnesses present in the courtroom waiting to be heard by the trial court. The record reflects that the only individuals present during the hearing were the trial judge, the judge's staff, Lumumba, Lumumba's client, and opposing counsel. While it is clear that the words Lumumba used to express himself were inexcusable and at best "truculent," the effect of Lumumba's words, however lasting and/or damaging, was limited to only those individuals present in the courtroom at the time the exchange took place. Clearly, Lumumba's comments were wrong and completely inappropriate. However, because such comments did not result in actual or potential injury to the tribunal, it cannot be established that they were so grossly egregious as to warrant a six month suspension.
¶ 58. Today, the majority holds that Lumumba's statements to the trial judge regarding "paying off judges" were intended to disrupt, and in fact did disrupt, the court proceedings in violation of Rule 3.5(c). The majority does not address an extremely important issue regarding the rationale behind Lumumba's sanction. Prior to publishing the words for which Lumumba is being sanctioned, Judge Gordon said, "I want you to know this hearing is now over with and" Lumumba said, "Can I ask" Judge Gordon said, "And there will be nothing else to be made of record." At that very moment, the hearing had adjourned, and the proceedings were concluded. Rule 3.5(c) prohibits a lawyer from engaging in conduct intended to disrupt a tribunal. It is problematic to sanction Lumumba for disrupting a tribunal, when the tribunal had already adjourned the proceeding. Before the exchange which resulted in the Rule 3.5(c) violation, the trial judge had already ruled *893 on Lumumba's motions. In addition to the numerous and rigorous demands placed upon trial court judges, they never relinquish the tantamount responsibility of ensuring order and control in their courtrooms, even among lawyers. Because the hearing had concluded or, at least, so nearly concluded Lumumba's statements concerning "paying off judges" were at most, minimally disruptive. Thus, I conclude that a Rule 3.5(c) violation under the present circumstances warrants no more than a public reprimand.
¶ 59. The majority correctly points out that this case is one of first impression. Prior to this, the only violations of Rule 3.5 of the Professional Rules addressed by this Court dealt with sub-parts (a) and (b). See Miss. Bar v. Logan, 726 So.2d 170, 178 (Miss.1998) (an attorney's ex parte communication with a magistrate for purposes of obtaining procedural advice was not a violation of Rule 3.5(a) prohibiting ex parte communication with judge or other official, in light of the fact that it appeared to be a common and accepted practice at the time the attorney did so); Attorney L.S. v. Miss. Bar, 649 So.2d 810, 813 (Miss.1994) (an attorney's contact with jurors post-verdict when such conduct, is prohibited by court order, and misrepresenting his authority to talk to jurors violated Rule 3.5(b) and warranted a private reprimand).
¶ 60. Without any guiding precedent, we look to case law from our sister jurisdictions. The facts in the instant case are most similar to those in Prucker v. Statewide Grievance Committee, 1995 WL 356758 (Conn.Super.Ct.1995). In Prucker, an attorney appealed a decision from the statewide grievance committee which recommended that the attorney be reprimanded. Id. During a workers' compensation hearing, Prucker became frustrated at what he considered to be a lack of progress on his client's claim. Id. As the hearing drew to a close, Prucker walked out of the room, saying "Bullshit" or "This is bullshit." Id. The commissioner admonished the attorney to refrain from using profanity, but Prucker did not respond and walked out. Id. The Commissioner stated in her written complaint that Prucker shouted expletives at her, and that the hearing had not concluded when Prucker walked out. Id. The reviewing committee concluded that Prucker's conduct constituted a violation of Rule 3.5(c) of the Rules of Professional Conduct and recommended that Prucker be reprimanded. Id. On appeal, the Superior Court of Connecticut affirmed the ruling of the reviewing committee. Id. Prucker is very similar to the facts in the instant action. Lumumba's comments to Judge Gordon, while not profane, bear the same degree of inappropriateness as those used by the attorney in Prucker. In Prucker, the commissioner stated that the proceeding had not concluded, and therefore, the attorney's comments were held to have violated Rule 3.5(c). In the case sub judice, assuming that the hearing had not adjourned, Lumumba's resulting violation of Rule 3.5(c) cannot be said to warrant anything more than a public reprimand.
¶ 61. While we review disciplinary matters de novo, we are permitted to defer to the findings of the Tribunal. Today, the majority chooses to ignore the recommendation of the Tribunal. The Tribunal considered all of the evidence in this case, including its personal observation of the witnesses as well as Lumumba's testimony and determined that a public reprimand was appropriate under these facts. It is illogical for the majority to hold that Lumumba violated the same rules determined by the Complaint Tribunal but should receive a harsher sanction. In my opinion, the paramount issue for this Court to consider while taking all the factors of Inserra into account when assessing the gravity of *894 a sanction is whether or not the sanction is proportional to the rule(s) violated. A disciplinary sanction must reflect the serious nature of the harm inflicted on the orderly administration of justice by the attorney's behavior. In the instant action, I am of the opinion that a public reprimand is the appropriate sanction under the present circumstances.
¶ 62. The Preamble to the Mississippi Rules of Professional Conduct reads, "A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials. While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold [the] legal process." This theme is reiterated in the comment to Rule 3.5 which states, "Refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants." Unquestionably, Lumumba's conduct on the record fell short of these honorable standards. However, I wholly conclude that Lumumba's comments did not result in any injury to the tribunal, the administration of justice or the legal process. To this end, I respectfully dissent from the majority's holding to suspend Lumumba from the practice of law for a period of six months.
DICKINSON, Justice, concurring in part and dissenting in part:
¶ 63. In my view, the majority is correct in finding that attorney Chokwe Lumumba violated Rules 3.5 and 8.4 of the Mississippi Rules of Professional Conduct by making numerous statements in court, on the record, which not only were calculated to disrupt the tribunal, but also served to prejudice Lumumba's client. However, because I conclude that the statement made by Lumumba to the reporter for the Clarion-Ledger was political speech protected by the First Amendment to the United States Constitution, and because I do not believe the record supports a finding that Lumumba's statement to the reporter related to a pending case or served to prejudice the administration of justice, I am not prepared to agree that Lumumba violated Rule 8.4(d) by making it. I therefore respectfully dissent, in part.
¶ 64. I wish to clearly point out that my disagreement with the majority is not with its interpretation of the law, but rather with its determination of facts. I do not believe the Bar met its burden of proving Lumumba's statement to the reporter was directed toward the pending case. The statement, on its face, is general in nature, and expresses Lumumba's personal opinion of the judge's judicial temperament. The Bar produced no evidence to prove the statement was made as a criticism of the judge's conduct in the pending case. Had I concluded, after reviewing the record, that the statement referred to Lumumba's case pending before the judge, I would have concludedas the majority didthat it violated Rule 8.4. However, I cannot agree that a lawyer's our-of-court general criticism of a judge is sanctionable, unless the statement refers to a pending case and is prejudicial to the administration of justice. Such general criticism, I believe, is protected by the First Amendment.

Rule 8.4
¶ 65. Mississippi Rule of Professional Conduct 8.4 states: "It is professional misconduct for a lawyer to ... (d) engage in conduct that is prejudicial to the administration of justice."
¶ 66. A majority of the Tribunal held that Lumumba violated MRPC 8.4(a) and 8.4(d) when he stated to a Clarion Ledger reporter that Judge Gordon has "the judicial temperament of a barbarian." A dissenting *895 member of the Tribunal, however, believed that Lumumba's statement to the Clarion-Ledger reporter was protected by the First Amendment, and that therefore there was no violation of the Rules of Professional Conduct.
¶ 67. Although we have no Mississippi cases directly on point, several cases from other jurisdictions have held that similar attorney criticism of judges is protected by the First Amendment. For instance, in Standing Committee on Discipline v. Yagman, 55 F.3d 1430 (9th Cir.1995), the Ninth Circuit held that an attorney could not be disciplined for expressing his opinion that a judge was anti-Semitic. The attorney in Yagman was quoted in the L.A. Daily as saying that the judge "has a penchant for sanctioning Jewish lawyers... I find this to be evidence of anti-Semitism." Id. at 1434.
¶ 68. In Ramsey v. Board of Professional Responsibility, 771 S.W.2d 116 (Tenn.1989), numerous comments to the media critical of the judiciary were held to be protected and not sanctionable because "[a] lawyer has every right to criticize court proceedings and the judges and courts of this State after a case is concluded, so long as the criticisms are made in good faith with no intent, or design to wilfully or maliciously represent those persons or institutions or bring them into disrepute."
¶ 69. In Justices of the Appellate Division v. Erdmann, 33 N.Y.2d 559, 347 N.Y.S.2d 441, 301 N.E.2d 426 (1973), sanctions against lawyer who made critical comments about judges before whom he practiced were reversed as insufficient to warrant discipline. The offending comments, which appeared in the March 12, 1971 issue of Life magazine, were:
There are so few trial judges who just judge, who rule on questions of law, and leave guilt or innocence to the jury. And Appellate Division judges aren't any better. They're the whores who became madams. I would like to [be a judge] just to see if I could be the kind of judge I think a judge should be. But the only way you can get it is to be in politics or buy itand I don't even know the going price.
Id. at 441-42, 347 N.Y.S.2d 441, 301 N.E.2d 426 (Burke, J., dissenting). These comments clearly would have been sanctionable if directed toward a particular judge, and made in court during the course of representation of a client in a case. However, the statements were not about a particular case, and were made outside the court to a Life magazine reporter. Consequently, they were found to be merely out-of-court statements of political opinion and protected by the First Amendment.
¶ 70. The Bar argues that Lumumba's statement to the reporter was, indeed, a violation of the Rules of Professional Conduct, and not protected by the First Amendment because it was prejudicial to the administration of justice. The Bar says comparing his judicial temperament to that of a barbarian impugned Judge Gordon's integrity, qualifications to hold office, and the integrity of the judicial system. The Bar fails, however, to direct us to evidence in the record to support this theory. Additionally, it could be argued that the Bar's position would prevent any criticism of any judge, since it might impugn the judge's "integrity, qualifications to hold office, and the integrity of the judicial system."
¶ 71. The Bar further submits that there are other available avenues for lawyers to air grievances against the judiciary without being publicly disrespectful, i.e. appealing rulings and filing complaints with the Mississippi Commission on Judicial Performance. This interesting observation has no bearing on the question before *896 us. Either Lumumba had a right to make the statement, or he did not. If he did, the availability of other "avenues" is irrelevant.
¶ 72. To support its position, the Bar cites People ex rel. Chicago Bar Association v. Metzen, 291 Ill. 55, 125 N.E. 734, 735 (1919), in which the Illinois Supreme Court held that a lawyer should "submit his grievances to the proper authorities," while "[u]njust criticism, insulting language and offensive conduct toward the Judges, personally, by attorneys, who are officers of the Court, which tend to bring the Courts and the law into disrepute and to destroy public confidence in their integrity cannot be permitted." The Bar also submits United States v. Cooper (In re Zalkind), 872 F.2d 1, 3 (1st Cir.1989), which held that the First Amendment did not protect an attorney who insulted a judge and raised doubts about the judge's impartiality, and In re Holtzman, 78 N.Y.2d 184, 573 N.Y.S.2d 39, 577 N.E.2d 30 (1990), in which a First Amendment challenge to discipline was rejected based on the need to protect the public interest and maintain the integrity of the judicial system. I find these cases to be clearly distinguishable. Cooper involved an attorney's conduct and language to the judge while in court, while the attorney in Holtzman released to the media specific allegations (as opposed to opinions) of misconduct which were found to be false.
¶ 73. Lumumba and the amicus argue that Rule 8.4(d) is violated only when an attorney engages in misconduct which has a prejudicial effect on a judicial proceeding. They cite Rogers v. Miss. Bar, 731 So.2d 1158, 1170 (Miss.1999), in which this Court stated: "[f]or the most part [Rule 8.4(d)] has been applied to those situations where an attorney's conduct has a prejudicial effect on a judicial proceeding or a matter directly related to a judicial proceeding." See also Byrd v. Miss. Bar, 826 So.2d 1249, 1253 (Miss.2002).
¶ 74. I suppose any lawyer making a statement critical of a judge could later regret it, should the judge retaliate in a subsequent judicial proceeding. And such retaliation could, I suppose, be called prejudicial. But if the effect of the rule is to bar all out-of-court criticism by lawyers of judges for fear of what it might do, then I reject it.
¶ 75. In Yagman, the court held that in order to be sanctionable, a statement to the press relating to a judicial matter unrelated to a pending case must "pose a clear and present danger to the proper functioning of the courts." Lumumba's "judicial temperament of a barbarian" statement was simply an opinion of political speech which I would find protected by the First Amendment. In Yagman, the court stated:
Statements impugning the integrity of a judge may not be punished unless they are capable of being proved true or false; statements of opinion are protected by the First Amendment unless they imply a false assertion of fact. Even statements that at first blush appear to be factual are protected by the First Amendment if they cannot reasonably be interpreted as stating actual facts about their target. Thus, statements of rhetorical hyperbole aren't sanctionable, nor are statements that use language in a loose, figurative sense.
55 F.3d at 1438 (footnotes, citations, & internal quotes omitted).
¶ 76. I have seen no evidence that Lumumba's statement affected any judicial proceeding. More importantly, I believe Lumumba's out-of-court statement to the reporter was one of opinion and thus protected by the First Amendment.
*897 ¶ 77. Rule 8.4(d) states that it is misconduct for an attorney "to engage in conduct that is prejudicial to the administration of justice." (emphasis added). The Rule does not say "might have been prejudicial." Rule 8.4(d) may therefore be applied only to conduct that affects a judicial proceeding or a matter directly affecting a judicial proceeding, as this Court stated in Rogers, 731 So.2d at 1170, and Byrd, 826 So.2d at 1253.
¶ 78. If the phrase "prejudicial to the administration of justice" were applied to statements made outside the courtroom which are not shown to have caused any problem or prejudice in any case, Rule 8.4(d) would be subject to such broad interpretation that I can not conceive of the scope of its application to judicial criticism. Members of the bar would have difficulty determining what activities, conduct, or speech could potentially be covered by the rule. The Bar would be justified in pursuing sanctions against members for anything that could be seen as a negative reflection on a judge or the professioneven where such negative reflection were justified.
¶ 79. The record does not demonstrate that Lumumba's comment to the Clarion-Ledger affected a judicial proceeding or any matter directly related to a judicial proceeding. His statement was doubtless insulting to Judge Gordon, as it would be to me. But the Bar has not demonstrated prejudice to any case or legal proceeding. Indeed, we are left only to assume that the comment related to the previous hearing, rather than a general response to a general question from the reporter during the interview, I therefore do not agree that Lumumba violated Rule 8.4(d).
¶ 80. It is my belief that this Court should hold that statements of opinion critical of a judge or of the judicial system, made outside the courtroomand which do not affect a judicial proceedingare generally protected by the First Amendment unless they imply a false assertion of fact capable of being disproved. See Milkovich v. Lorain Journal Co. 497 U.S. 1, 18-19, 110 S.Ct. 2695, 2705-06, 111 L.Ed.2d 1 (1990)(citing Restatement (Second) of Torts § 566, Cmt. a (1977)). This was the reasoning adopted by the Supreme Court of Idaho, Idaho State Bar v. Topp, 129 Idaho 414, 925 P.2d 1113, 1115 (1996), and the Supreme Court of Colorado, In re Green, 11 P.3d 1078, 1080 (Colo.2000).
¶ 81. Furthermore, the United States Supreme Court has held that statements must be reasonably interpreted as stating actual facts about their target before they can be punishable. Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 50, 108 S.Ct. 876, 879, 99 L.Ed.2d 41 (1988). Statements which are merely "rhetorical hyperbole," or that use language in a "loose, figurative sense" should not be sanctionable. National Ass'n of Letter Carriers v. Austin, 418 U.S. 264, 284-85, 94 S.Ct. 2770, 2781-82, 41 L.Ed.2d 745 (1974)(use of word "traitor" could not be construed as representation of fact); Greenbelt Coop. Publishing Ass'n v. Bresler, 398 U.S. 6, 14, 90 S.Ct. 1537, 1541, 26 L.Ed.2d 6 (1970)(use of word "blackmail" could not have been interpreted as charging plaintiff with commission of criminal offense). Lumumba's statement may be characterized as one of "rhetorical hyperbole."
¶ 82. Lumumba did not assert that Judge Gordon was literally a barbarian, but rather used the phrase to express his opinion, right or wrong, of Judge Gordon's judicial temperament. Certainly, false assertions of fact are punishable, as are opinions that imply a false assertion of fact. Additionally, statements by an attorney about a judge, even if truthful, may be punished if they are made in court and relate to pending legal matters where a *898 party might suffer prejudice as a result of the attorney's statements. See Gentile v. State Bar of Nevada, 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991). However, neither the Bar nor the majority explains how the profession or the public benefits from sanctioning an attorney for expressing an opinion about a member of the judiciary when that opinion does not interfere with or affect any case or proceeding. As the Supreme Court of Colorado stated in Green, "we begin with the accepted legal principle that if an attorney's activity or speech is protected by the First Amendment, disciplinary rules governing the legal profession cannot punish the attorney's conduct." 11 P.3d at 1083 (citing In re Primus, 436 U.S. 412, 432-33, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978); Bates v. State Bar of Arizona, 433 U.S. 350, 355, 365, 384, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); State v. Porter, 766 P.2d 958, 966-70 (Okla.1988)).
¶ 83. As an integral part of our tripartite form of government, the judiciary, may be criticized by the citizens it governs; and citizens who are also lawyers should not lose this privilege. "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." Garrison v. Louisiana, 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964).
¶ 84. I would hold the Tribunal erred in finding a violation of Rule 8.4(d) for Lumumba's statement to the reporter. Additionally, because I do not believe the statement violated Rule 8.4(d), I would also hold there was no violation of Rule 8.4(a) with regard to this statement. In all other respects, I am in agreement with the majority.
NOTES
[1] Lumumba actually served 1 ½ days in the Leake County Jail.
[2] The issue of "disrupting the proceedings" is not addressed by Lumumba, with the exception of the following statement from the "Summary of Argument" of Lumumba's brief; "The courtroom was virtually empty, the legal proceedings were completed and Judge Gordon entertained the dialogue by remaining on the bench." The amicus presents no argument or authority on the issue.
[3] Rule 4-8.2(a) of the Florida Rules of Professional Conduct is exactly the same as Rule 8.2(a) of the Mississippi Rules of Professional Conduct.
[4] Lumumba had previously been issued a Public Reprimand by the Bar's Committee on Professional Responsibility on April 30, 2000 in Docket No. 99-208-1, in which he was found to have violation the provision of Rules 3.5(c) and 8.4(a, d, and e) of the Mississippi Rules of Professional Conduct.