*1380 ORDER
FACTS AND HISTORY
This matter is before the Court on an order issued on December 22, 1994 which directed Clayton T. Lewis, a member of the Mississippi Bar, to appear and show cause why sanctions should not be imposed upon him for his disregard of professional obligations as to a number of clients and his failure to obey this Court’s prior directives as to those clients and their cases. Pursuant to that order, and upon summons as well as notice by certified mail detailing the charges, a hearing was held before a panel of this Court on February 8, 1995 which Lewis chose to ignore, neither responding in writing nor appearing either in person or through counsel. Before detailing Lewis’ actions and inaction, it must first be said that this is a sad occasion — sad and serious for Lewis, for his clients, for the Court and for the tradition of justice under the law. The issues brought by his behavior go to the very heart of how we as a civilized society assure equal justice to rich and poor alike and how our scheme of providing counsel to indigent citizens charged with crimes works.
The problems began at the very moment of Lewis’ appointment to replace the retiring public defender in Neshoba County. In the first case for which he was appointed, Alpha Lee Davis v. State, 92-KA-00272, he was beyond the allowed time for filing his first brief two weeks after his appointment. Lewis was appointed as counsel to pursue appeals in seven separate criminal cases coming out of the Circuit Court of Neshoba County.[1] These cases and Lewis’ representation of the defendant-appellants all have virtually identical histories of delay, neglect and inattention, all at the expense of his clients, who have been incarcerated throughout the periods from their convictions through the present, or who served many months and have been released on parole.[2] Except only as to a brief period during April and May of 1993, his motions for time have given no excuse or justification for delay other than a heavy case load.[3] The details of each case may be seen in the attached Appendix.
*1381 By the end of 1993 Lewis had by all appearances ceased to perform any duties in these cases. Hoping to determine the reason for his inaction, pursuant to an order entered in Alpha Lee Davis v. State, 92-KA-00797, the Court summoned him to appear before a panel 9:30 a.m. on January 26, 1994 to show cause why he should not be sanctioned for failing to prosecute that appeal. He was given by certified mail a detailed specification of the events subject to question. He appeared on that occasion, obviously ill and disoriented. The hearing was then continued and he was directed to report the state of his health to the Court within twenty days. He did not do so.
Having received no response from Lewis, and concerned about the other neglected cases, the Court on March 29, 1994 ordered him again to appear on April 11 and show cause why sanctions should not be imposed as to those appeals as well as 92-KA-00797. Summons issued on March 29 and was returned. Again, he was provided by certified mail with detailed specifications as to each case. Again, on April 11, 1994 the hearing was held before a panel of the Court.
First, he was asked to explain his failure to report on his health as previously ordered to do. His only response was that he was now better and that his doctors had not been able to determine what was wrong with him. He did say that in November he had viral pneumonia. He also reported that in February, 1994 he resigned as public defender and as an officer of the Mississippi Pro Bono Program and quit closing Farmer’s Home Administration Loans, thus reducing his case load substantially. He reported that during his tenure as public defender, he had, astoundingly, between 162 to 220 cases in any four month period, to be tried.[4] He compared his workload as the sole public defender in Neshoba County with a neighboring county which had three public defenders and two investigators. In addition to handling criminal proceedings, he was assigned all delinquency matters in youth court and indigent lunacy cases while conducting a private practice as well.
When examined about the other delinquent cases he said that he had talked to the circuit judge about his health in November, and the judge first allowed him to examine witnesses while sitting and ultimately canceled the term of court due to Lewis’ health. He did not, however, ever tell the circuit judge of Neshoba County that the work load was simply too great for one lawyer to handle. He said that having adjusted his work load he would be able to complete these matters. As to two, he excused his failure by saying that he thought that the appeals were without merit, but the Court reminded him that such an explanation was no excuse for failing to file his briefs and that abandoning the appeals was a decision for his clients, not for himself.
Following that hearing, the Court ordered him to file briefs in all cases within fifteen days and imposed sanctions of $1000.00 as to Alpha Lee Davis v. State, 92-KA-00797 and § 1500.00 as to the remaining appeals, collectively, with $500.00 to be suspended upon the filing of competent briefs. No briefs have been filed by Lewis, and no fines have'been paid.
By June of 1994, finding no other recourse available, the Court issued its order in each of the cases directing the Circuit Court of Neshoba County to appoint additional counsel to prepare briefs and process the appeals. These orders were issued on June 16, 1994, and the circuit judge promptly made those appointments. In each case, the newly appointed counsel has expeditiously filed briefs and the appeals are proceeding on track. It is important to note that these appointments of additional lawyers did not remove Lewis or relieve him of any of his duties in the cases.
*1382 In the meantime, Lewis, through a proceeding brought by the Mississippi Bar before a disciplinary tribunal of this Court was indefinitely suspended from practice and ordered to pay restitution to civil clients for funds received and misused by him. The Mississippi Bar v. Clayton T. Lewis, 93-B-01060, Opinion and Judgment issued September 20, 1994. That judgment stipulates that the suspension be lifted only upon application to the Court, an event which has not at this writing occurred.
Having still heard nothing from Lewis, the Court on December 22, 1994 issued another order directing Lewis to appear before a panel of the Court to explain his failure to comply with the April 11, 1994 order and to show cause why additional sanctions should not be imposed. Summons was issued, served and returned and he was given a detailed specification of the issues by certified mail, which was returned marked “unclaimed.” By that letter he was advised that he would be given the opportunity to provide testimony and to offer affidavits. In view of his earlier references to ill health, he was also told to be prepared to present medical affidavits if his health was a factor in his noncompliance. A hearing was convened on February 8, 1995 at which Lewis failed to appear. In his absence, the Court received the records in his cases which were pending as well as the process that was served upon him and the letters of specification that had been served and attempted to be served upon him.
Pending the February 8, 1995 hearing, the Court became aware that in April of 1994, in spite of all his other failures, Lewis accepted engagement as appellate attorney in David Clay v. State of Mississippi, 94-KA-00400. Although the record in that case was filed with the Clerk of this Court on November 21, 1994, approximately two months after his suspension, Lewis took no action either to terminate his representation in that case or to file his client’s brief.
DISCUSSION AND ANALYSIS
The Supreme Court of Mississippi has exclusive and inherent jurisdiction of matters pertaining to attorney discipline. Misc.R.Disc. 1(a). Although the rule provides that proceedings in such matters shall be conducted in accordance with the Rules of Discipline, “the [Court shall be the ultimate judge of matters arising under these rules,” and although the Rules of Discipline provide for a hearing procedure before an appointed tribunal for the ultimate determination of disciplinary matters and remediation, this Court has not, cannot and should never relinquish its prerogative and duty to regulate directly practice before it, including the power to take such action as it deems necessary to provide litigants with fair, rational and prompt consideration of their causes. The Rules of Discipline do not and cannot deprive any court of such powers as may be necessary for that court to maintain control over practice and proceedings conducted before it in ongoing cases or over the continuing conduct of an attorney which disrupts justice. Miss.R.Disc. 1(b). This Court has specifically enunciated the retention of that power.
The Court may, after reasonable notice and opportunity to show cause to the contrary, and after hearing, if requested, impose such sanctions as may be appropriate on any party, court reporter, trial court clerk, or attorney who fails to comply with these rules or any order issued pursuant to these rules....
Miss.R.App.P. 2(b). Any court without such power is something less than a court.
This is by no means new law. As early as 1836 the Mississippi High Court of Errors and Appeals stated the principle:
It is conferred by statute law of the state, and the doctrine is well settled, that without statutory provisions, the right to control its officers, and to determine who should appear before it in the capacity of attorneys, is incidental to all courts, and is necessary to the preservation of decorum, and the respectability of the profession. It is a power which ought to be exercised with great caution; although it is never used for the purpose of punishment, yet the decision of a court disbarring one of its attorneys, may have the most blighting effect upon the future destinies of the unfortunate individual.
*1383 Ex parte Brown, 2 Miss. 113 (1 How. 303) (1836), italics supplied. It is important to note that this power, at least in its summary aspect, is grounded not in the Court’s punitive jurisdiction but rather in its necessary and inherent power to regulate its proceedings. Today’s action as to Lewis is precisely so grounded. If punishment is warranted, that is a decision for another day through the tribunal procedure established in the Rules of Discipline. The Court’s present concern is the protection of the citizenry and the dignity of the legal system pending or in the absence of, such punishment or even a final adjudication as to the matters at hand. Lewis’ behavior over the last two years cannot be tolerated, and his clients and potential clients cannot be expected to retain the respect for law if the proceedings in ongoing cases are allowed to accommodate his manner of law practice any longer. First, the abuse must stop; thereafter will be the occasion for questions of punishment and permanent disposition of his privilege to practice. Again, almost a hundred years after Brown, this Court clearly expressed its inherent power to govern the practices of attorneys in the courts of the state and to hold hearings for such purposes. In re Steen, 160 Miss. 874, 134 So. 67 (1931), raised the question of whether only trial courts with procedures and mechanisms for conducting evidentiary hearings could conduct such proceedings. In holding that we could indeed assume original jurisdiction in such a proceeding, we first observed that fundamental to the establishment of the superior governmental entities by the Constitution is the vesting of those powers necessary to insure the ability of those entities to exercise essential measures of preservation and protection to secure their existence and the beneficial execution of the high governmental duties imposed upon them. We held:
And there could hardly be any serious denial of the assertion that the trained and learned lawyer of dependable moral character is an indispensable assistant in the operation of the intricate machinery of efficient government, especially in the courts, to say nothing of the necessity of his presence in the manifold and almost infinite complexities of commercial and civil life. Gratitude for the past would incline us to make this admission, even if candor and common observations in respect to the present did not compel it. Indeed, the Constitution itself has recognized the fact, and has declared that the recognition shall be permanent, for it has, by apt provision, made the continuance of the superior courts therein established conditional, in effect, upon the continued existence of the legal profession, because in its sections 150 and 154, Const. 1890, it expressly ordains that no person shall be eligible to the office of judge of the Supreme Court, of the circuit court, or of the chancery court, who shall not have been a practicing attorney and citizen of the state for five years.
Since, then, the learned lawyer of trustworthy character is essential not only to the continued existence of these three superior courts, but is necessary, as well, to the efficient and beneficial performance of the appointed duties of said courts, it follows inevitably, under the principles stated, that the disciplinary power of disbarment or suspension belongs to each of them as inherent in its creation, establishment, and organization, as something which in the nature of things, belongs to them and to each of them. And thus the jurisdiction and the correlative duty falls even within the rigid definition laid down in Fuller v. State, 100 Miss. 811, 817, 57 So. 806, 807, 39 L.R.A.(N.S.), 242 Ann.Cas. 1914A, 98, wherein it was said that “the inherent powers of a court are such as result from the very nature of its organization, and are essential to its existence and protection, and to the due administration of justice.”
In re Steen at 134 So. 69-70. While recognizing that the trial courts also have the power to regulate practice in their courts, we held that the supreme regulatory power rests here. The attorneys sought to convince this Court that our lack of trial mechanisms and venue questions limited our power and that the matters should be transferred to the circuit or chancery courts in the county of the residence of the respondent. Dismissing these arguments, we held:
*1384 In [Ex parte Cashin, 128 Miss. 224, 90 So. 850 (1922) ] this court has said that, in disbarment proceedings, the court must and will exercise the power to determine the method of procedure to be followed, affording all reasonable opportunity to be heard, and for a fair hearing, without oppression or injustice.
Steen at 134 So. 71. We are satisfied that Lewis has been given every opportunity to present evidence and otherwise disprove, explain or justify the neglect appearing from an examination of the various case files and records. Unfortunately, he failed to avail himself of those opportunities.
More recently, the inherent power of this Court in bar matters was expressed in Bramlett v. Burgin, 382 So.2d 284, reh. den. (Miss.1979), in which the chancellor issued a fiat prohibiting the state bar from filing with the Supreme Court a certified copy of an attorney’s federal conviction.
Though this Court is ordinarily an appellate court, we are a special tribunal in cases involving disciplinary proceedings regarding its officers; the attorneys who practice in the courts of this state. No circuit or chancery court has any jurisdiction whatever to directly or indirectly enjoin or circumvent proceedings over which this Court has exclusive jurisdiction. Totally without subject matter jurisdiction was the lower court which issued the purported injunction — an utter nullity.
Bramlett at 382 So.2d 286.
Today’s action must not be mistakenly taken as an abrogation of the delegation of responsibility to the complaint tribunal and to the Mississippi Bar as expressed in the Rules of Discipline. That delegation remains intact. But that delegation and those procedures do not strip this Court of its fundamental responsibility, in present, real time, to prevent injustice to litigants. The Court must and does retain the ability to regulate, pending further proceedings under the rules, the operation of the courts and the fair and just progress of litigation. Today’s decision is the implementation of that control of litigation; Mr. Lewis’ ultimate fate as an attorney lies with the disciplinary process under the rules.
The Court is mindful of and sympathetic with the burdens of public defenders in our state who routinely bear the responsibility for both the trial and appeal of too many of the criminal matters in their counties. This Court regularly sees the work of those who represent indigents performed conscientiously and capably, and recognizes such representation as a noble aspect of our profession. It may very well be that in an effort to meet the duty of the citizenry of a free society to provide the assistance of counsel to all charged with crimes, the county governments and circuit courts on occasion endeavor to get too much out of a single appointed counsel or public defender. A system under which a single attorney will bear not only the bulk of the trials of indigents in a county but also the appellate responsibility can well be criticized. It was in recognition of a public defender’s heavy work load that Lewis was granted repeated extensions and extreme accommodation by the Court. However, whether in private practice or employed part time or exclusively by a private concern or by the government, it is ultimately each lawyer’s responsibility as a professional to manage his case load, even if doing so requires refusal of new cases. It is his direct responsibility to each client that distinguishes him from those who are not entitled to that appellation. At some point — a point reached long ago in these matters — accommodation of the lawyer approaches that of injustice to the litigants.
A final word of caution to the bar is in order. One reading the story of Lewis’ tenure as public defender set out in the Appendix to this opinion could conclude that the established procedure for seeking extensions is that the motion for such relief is to be filed after the allotted time has expired. Although the Court did in this case and has in others indulged attorneys doing so, it would be a mistake to conclude from our dealings with Lewis that such is our policy or will be allowed in the future in any but the most extraordinary circumstance. Nor should past practices in these or other cases lead the bar to the conclusion that any party- — state or defendant, appellant or appel-lee — can file a motion for an extension of the *1385 briefing schedule in the last days of the allotted time and expect automatically to receive an extension simply because there is insufficient time to prepare the brief after the movant receives a response to his motion. Until such time as an extension is granted, the brief remains due, and lawyers who request an extension at the last minute do so at their own peril and, most importantly, at the peril of their clients.
IT IS, THEREFORE, ORDERED that, in view of the foregoing, Clayton T. Lewis is, cumulative to his present suspension, further indefinitely suspended from practicing law in the courts of this state until further order of this Court. Finally, it is further ordered that Lewis’ conduct in the appeals mentioned be referred to the Mississippi Bar for appropriate disciplinary action under the Rules of Discipline before a duly-appointed complaints tribunal of the Court, and that the Clerk of this Court distribute this order to the presiding judge of the Eighth Circuit Court District and the presiding chancellor of the Sixth Chancery Court District.
SO ORDERED.
/s/ Michael Sullivan MICHAEL SULLIVAN, JUSTICE, FOR THE COURT
APPENDIX
Although the pattern of Clayton T. Lewis’ dereliction in each of the cases assigned to him is very similar to each of the others, it is appropriate to detail the events as to each case. In order to avoid burdening the text of this order with such repetitive material, this appendix has been prepared to memorialize the succession of events.

Alpha Lee Davis, 92-KA-00272

Davis was convicted of burglary on March 19, 1992, in the Neshoba County Circuit Court, represented by another attorney who was then a part time public defender for Neshoba County. He was sentenced to six years in prison. Thereafter, his notice of appeal was filed. On October 16, 1992 and order was entered in the trial court replacing his counsel (who was resigning as public defender and closing his law office to accept other employment) with Clayton T. Lewis, another part-time public defender. On February 4, 1993 an order was entered in this Court substituting Lewis as counsel. The record of the trial court had by then been filed with this Court and Lewis was notified that the Appellant’s brief was due on March 16.
Then begins Lewis’ inaction in the defense of his client. On March 22, 1993 he was notified by the Clerk of this Court that his brief was delinquent and that the case would be submitted for dismissal if no brief was filed within fourteen days. None was filed, and on April 14 he filed a motion for additional time and was granted until June 24. On June 25 Lewis received more time, through July 15. In the meantime, Davis having been transported to Parchman, became concerned about his appeal and his attorney’s failure to respond to his inquiries, and on July 24, 1993 he wrote the staff of the Court seeking help in obtaining copies of his brief in this and other matters being handled by Lewis. Of course, there were no briefs to obtain.
On July 19 Lewis filed another motion for time, and received an extension through August 12. On August 19, he sought and was granted still another extension, through September 2. On September 3, he received his sixth extension, through September 23, 1993. Again, out of time, an extension through October 15, 1993 was granted.
In the hope of persuading Lewis to do his duty, the Court, on October 27, 1993 ordered him to show cause why the appeal should not be dismissed. In that order the Court told Lewis that yet another motion for time would be accepted as a response. Lewis did nothing, although his client filed his motion for time, pro se. The Court granted additional time through December 19. Of course, Lewis did nothing.
On December 27 the Court ordered Lewis to show cause why the appeal should not be dismissed, again offering an extension, saying that a motion for additional time would be accepted as a response. Lewis did not respond, and on December 28, 1993, in ap *1386 parent desperation, Davis filed his own meager effort.

Alpha Lee Davis, 92-KA-00797

On July 13, 1992 Davis was convicted of receiving stolen goods, also in the Circuit Court of Neshoba County, represented again by Lewis, as public defender for that county. On this occasion Davis was sentenced as a habitual offender to five years without the possibility of parole, suspension or reduction, the sentence to run concurrently with that in the above-referenced matter. Lewis filed a notice of appeal, designated the record and notified the reporter to transcribe her notes, which she did, albeit with some delay. The record was filed in this Court on January 13, 1993, and the Appellant’s Brief was due on February 22, 1993. On February 26, the Clerk notified Lewis that the brief was delinquent. That began the same succession of delays, extensions and inattention to the Clerk’s notices that infected the other Davis appeal. It was not until June 15 that Lewis even sought an extension, as the result of which he was granted three weeks from the date of that filing. On August 5, another fifteen days was granted; on August 23, another, through September 17; on September 23 another three weeks, and on November 4 still another three weeks.
Obviously perplexed at the goings on and the multitude of notices from the Court, Davis in this case too, on November 4, 1993 filed his pro se effort at a brief.
In this case too, the Court on December 7, 1993 issued a show cause order, also inviting an additional request for extension which was ignored.

James Connell, 92-KA-00869

James Connell, represented by Lewis, was convicted of two counts of rape in the Nesho-ba County Circuit Court and sentenced to two consecutive fifteen year terms on July 21, 1992. The appeal was perfected, and the Appellant’s Brief was first due on February 8, 1993. On February 16, Lewis was notified that the appeal would be submitted for dismissal if the brief was not filed by_March 2, 1993. On April 30, 1993 he filed a motion seeking and received an extension through May 20; on May 21 he sought and received a further extension through June 10, and on June 11 was granted still another through July 1, 1993. Additional extensions were granted, on his motions, all filed late, through July 21, August 20 and September 17, 1993. With the latter, he was advised that no further extensions would be granted. Although he stopped requesting extensions then, he did not file the brief.
Again, on December 7, 1993, the Court issued a show cause order, also inviting an additional request for time, which was ignored.

Levester Hickman, 92-00870

Levester Hickman was convicted in Nesho-ba County Circuit Court of on July 15, 1992 on the charge of burglary, attempted rape, sexual battery and felony escape. He was sentenced to concurrent terms of eighteen years for sexual battery, twelve for burglary of an inhabited dwelling, five for attempted rape and one year for escape. The appeal was perfected, and Lewis was due to file his Appellant’s Brief on January 10, 1993. The Clerk on February 5 sent him the first of a number of notices of delinquency.
On March 22, 1993 Hickman, dissatisfied with his inability to communicate with Lewis, filed a motion seeking replacement of Lewis as counsel. Immediately, on March 24, Lewis filed his own motion to withdraw, and both motions were denied, neither providing for replacement counsel. Concurrently with his motion to withdraw, Lewis filed a motion seeking additional time to file his brief; that motion was granted with an extension through April 23, 1993. On April 30, pursuant to another late filed motion, the Court granted an additional twenty-one days, and again on May 21 an additional extension through June 10 was granted. (It can be noted that this latter extension was upon the only motion recited thus far which was filed prior to the expiration of the previous extension, it being received by the Court on May 21, 1993, the final day of that extension.) On June 11 the next motion for time was filed, and an extension through July 1 was grant *1387 ed. On July 2, again upon Lewis’ motion, the period was extended through July 21. During this period, Hickman continued to complain of lack of communication with his attorney.
Continuing, on July 23, again on a late filed motion, the Court extended the period for filing through August 22, 1993; on August 23, again, through September 17, and again on November 4 through November 29. On December 1, 1993 the Court issued a show cause order preparatory to dismissal of the appeal.

Markeose Black, 92-KA-01291

Black was convicted of grand larceny on November 10, 1992 in the Circuit Court of Neshoba County. Lewis perfected the appeal; the record was filed, and the Appellant’s Brief was first due on March 7, 1993. On April 12, 1993 the Clerk issued her delinquency letter which generated a motion from Lewis filed on May 5. He was granted through May 27 to file the brief. Additional extensions were sought and granted — first through June 17, then July 8, then August 7, and then August 30. The motions for these extensions were consistently filed late. On September 10,1993 another motion was filed, and an extension through November 22 was granted.
Finally, on December 1, 1993, the court ordered Lewis to show cause why the appeal should not be dismissed. The certified mailing of that order was received by Lewis, but he made no response.

Lonnie Moore, 92-KA-1292

Moore was convicted in Neshoba County Circuit Court on November 12, 1992 of receiving stolen goods, and was sentenced to a term of five years. Lewis perfected his appeal; the record was filed on February 26, 1993, and the Appellant’s Brief was first due on April 7, 1993. On April 12 the Clerk of this Court notified him of his delinquency. It was not until May 5 that he sought an extension, which was granted, requiring the brief to be filed by May 27. At his request, additional extensions were granted, first through June 17 and then through July 8, August 30 and November 21, 1993. In each instance, Lewis filed his motion with the Court after the brief was due.
On December 1, 1993 he was ordered to show cause why the appeal should not be dismissed. That order was delivered to him by certified mail on December 14, 1993. Lewis failed to respond to that order.

Donnie Russell, 93-KA-01022

Russell was convicted on July 22, 1993 of two counts of capital rape and one of sexual battery. Lewis perfected the appeal; the record was filed on November 18, 1993, and the Appellant’s Brief was first due on December 28. On January 6 and January 24, 1994 delinquency letters were mailed by the Clerk to Lewis.
On February 15, 1994 he was ordered to show cause why the appeal should not be dismissed. The certified mail notification was returned unclaimed. Lewis failed to respond either to the Clerk’s letters or to the show cause order.

.The specific cases to which Lewis was assigned are Alpha Lee Davis v. State of Mississippi, 92-KA-00272; Alpha Lee Davis v. State of Mississippi, 92-KA-00797; James Connell v. State of Mississippi, 92-KA-00869; Levester Hickman v. State of Mississippi, 92-KA-00870; Markeose Black v. State of Mississippi, 92-KA-01291; Lonnie Moore v. State of Mississippi, 92-KA-1292, and Donnie Russell v. State of Mississippi; 92-KA-01022. A history of the appeals course and Lewis’ actions in each of these cases is set forth in detail in the Appendix to this order. There are other cases appearing on the docket of the Court which reflect Lewis' appearance as counsel, but it is these seven which are of concern in this proceeding and which cumulatively form the basis for the action taken here.

. Davis, Connell, Hickman and Russell were at last report imprisoned at the Parchman facility; Black was released on parole on October 8, 1993; Moore on November 16, 1993.

. In three cases, those of Hickman, Black and Moore, his motions cite a period of illness of "more than a week” which contributed to the *1381 delay. In no subsequent motions did Lewis indicate that any personal or health problems were causal factors in his failure to brief his appeals.

. This would require more than a trial per day throughout the period of his tenure. It is possible that Lewis mis-spoke himself and that this number includes those assigned to him which did not require trial; in any event, the work load in significant and would no doubt impact on anyone’s ability to properly handle the appellate side of his practice.