# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01195-SCT

*GREG SPORE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/14/2015 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JEFFREY M. GRAVES |
| | DENNIS C. SWEET, III |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JOSEPH SCOTT HEMLEBEN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 03/09/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.    Attorney Greg Spore appeals the order finding him in direct criminal contempt by Judge Jeff Weill Sr. of the Hinds County Circuit Court for displaying willful, contemptuous behavior that interfered with the orderly administration of justice.  Finding that the record supports the trial court's order beyond a reasonable doubt, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    On July 13, 2015, Greg Spore, Hinds County Assistant Public Defender, appeared in the Circuit Court of the First Judicial District of Hinds County before the Honorable Jeff

Weill Sr., Circuit Judge, to represent Jeremy Cowards in an adjudication hearing, following the violation of his probation. Cowards had been indicted for house burglary and was ordered on January 11, 2011, to Regimented Inmate Discipline (RID).[1] On October 31, 2011, when Cowards had completed the RID program, he was sentenced to five years of nonadjudicated probation. Thereafter, on May 6, 2015, Cowards was convicted of domestic violence in Jackson Municipal Court for punching a woman while she held a young child.

¶3.　At Coward's hearing on the probation violation before Judge Weill, he was found guilty of burglary for which he previously had received nonadjudicated probation. After the pronouncement of guilt, Judge Weill asked whether the defense had any argument for the court to consider for sentencing. Spore enumerated various reasons for the court to consider allowing Cowards to remain out of jail. Spore stated:

> There are many factors at play here Your Honor concerning both employment, family -- he's got the support of both immediate and extended family in the community, much accountability. He has two daughters, one an infant daughter; in fact born in December, December 24th, his Christmas miracle I believe he refers to her as. Johneia I believe her name is. And he's trying, he wants to get back to his family. He wants to get back to his employer. I left a message trying to get up with Mr. Tony Lofton here in the security service here in Jackson, Mississippi. He's employed Mr. Cowards in the past, and it's my understanding that he's willing to employ him in the future, as soon as he is released.

---

[1] Mississippi Code Section 47-5-110.2 (Rev. 2015) provides that "[f]rom and after January 1, 2017, no person to be sentenced to the custody of the Mississippi Department of Corrections shall be ordered to a Regimented Inmate Discipline (RID) program by any court of this state."

¶4.     Following Spore's argument, Judge Weill asked whether the defense had "anything further in argument on the sentencing to be imposed" and whether the defendant wanted to say anything. Spore responded that he was speaking on Cowards's behalf.

¶5.     Judge Weill asked a third time whether Spore had "fully made [his] argument," and Spore again replied, "[y]es, Your Honor." Spore continued: "[a]nd again, we would just implore the Court to . . . allow him to maintain his non-adjudicated status."[2] Judge Weill then stated that "the reason I'm asking if you've fully made your argument, is after I pronounce sentence I'm not going to hear further argument -- [.]" Spore replied, "[u]nderstood, Your Honor." Judge Weill then again told Spore to "finish your argument." Spore continued:

> Yes, Your Honor. I believe, and on the outset I did make mention of the preliminary hearing. That was a concern only insofar as we don't know if indeed one took place. And if one did take place we don't know the date of that particular hearing. That would just give us a better sense of the timeline of how things have run from his arrest, the initial arrest for the alleged -- excuse me -- simple domestic. As well as I believe a warrant in this instance was filed mid June. And we're just trying to gauge if that was early on. I have a suspicion that the preliminary hearing may have taken place in March in the immediate wake of his initial arrest, prior to an affidavit being filed with the Court for a warrant for his arrest for the revocation, for the violation allegation.

Judge Weill then asked "anything further?" and Spore responded "[n]o, Your Honor."

¶6.     Judge Weill then sentenced Cowards to ten years in prison with three years suspended, after which the following colloquy took place between Spore and Judge Weill:

> MR. SPORE: Your Honor we just have one -- it's not an argument Your Honor.

---

[2]Because Judge Weill had just adjudicated his burglary conviction, Spore was likely arguing for some type of probation or some other sentence that does not require incarceration.

THE COURT: Excuse me.

MR. SPORE: We had one last point. We'd assumed the reason why –

THE COURT: Excuse me Mr. Spore.

MR. SPORE: Yes, sir.

THE COURT: I gave you ample opportunity, twice, to make all of your arguments –

MR. SPORE: This is not an argument.

THE COURT: -- and I'm not going to listen to further argument.

MR. SPORE: Your Honor.

THE COURT: So we're going to conclude this matter and move on to -- and there will be five years of post-release supervision when he gets out of jail.

MR. SPORE: Your Honor may I please make my record. This is not an argument necessarily. There was an assumption that the Court would follow *Blocker*[3] in this instance. The Court made mention of the fact that Mr. Cowards, on his five-year non-adjudicated sentence, original sentence, served I believe six months in the RID Program, successfully completed the RID Program. That fact, that fact alone, he cannot be sentenced.

Judge Weill stopped Spore a second time: "Excuse me Mr. Spore. I've made my ruling. I gave you ample opportunity to make your argument. So we're concluding this matter at this time. Please sit down." Spore responded, again, that he was "simply trying to make my record." Judge Weill then found Spore in direct criminal contempt and fined him $100.00, to be paid from personal funds by 12:00 p.m. (noon) on July 14, 2015. Judge Weill's written order stated that "Spore was held in direct criminal contempt due to his failure to abide by

---

[3] It appears Spore was citing a case to Judge Weill. But nothing in the record before this Court indicates to what Spore was referring. And it was not mentioned prior to Judge Weill's ruling.

4

an order of the Court, for willful disruptive interference in court proceedings, and for violating Rule 3.02 of the *Uniform Circuit and County Rules*."

¶7.     Spore filed a Notice of Appeal on August 12, 2015, and raised the following issues: (1) Whether the trial court erred in issuing an order finding Greg Spore in direct criminal contempt where Greg Spore did not display any contemptuous conduct, and (2) whether the trial court erred in finding that Greg Spore violated Rule 3.02 of the Uniform Circuit and County Court Rules where Greg Spore did not in any way act unprofessionally or disrespectfully toward the judge. In the State's briefing it stated the issues differently. The State argued that the trial court did not err in finding Greg Spore in direct criminal contempt for (1) Spore's failure to obey an order of the court and (2) his willful disruption and interference with the orderly proceedings of the court. The court will address the issue for decision as whether the record shows beyond a reasonable doubt that Spore displayed willful, contemptuous conduct that interfered with the orderly administration of justice.

## STANDARD OF REVIEW

¶8.     This Court applies an "ab initio"[4] standard to cases of criminal contempt. ***In re Smith***, 926 So. 2d 878, 885 (Miss. 2006) (citing ***Brame v. State***, 755 So. 2d 1090, 1093-94 (Miss. 2000)). This Court "'is not bound by the manifest error rule when the appeal involves a conviction of criminal contempt. Instead, this Court proceeds ab initio to determine whether the record proves the appellant guilty of contempt beyond a reasonable doubt.'" ***In re Smith***, 926 So. 2d at 886 (quoting ***Purvis v. Purvis***, 657 So. 2d 794, 797 (Miss. 1994)). "The burden

---

[4] "Ab initio" is defined as "[f]rom the beginning." *Ab initio*, Bryan A. Garner, *Black's Law Dictionary* (10th ed. 2014).

of proof to establish that contempt has been committed is on the party asserting that contemptuous conduct has occurred" and, "[i]n a proceeding for criminal contempt, evidence of guilt must be established beyond a reasonable doubt." *In re Smith*, 926 So. 2d at 886 (citing *In Interest of Holmes*, 355 So. 2d 677, 679 (Miss. 1978)).

## DISCUSSION

**Whether the record supports, beyond a reasonable doubt, that Spore displayed willful, contemptuous conduct that interfered with the orderly administration of justice.**

¶9.    The power to hold an officer of the court in contempt "is an important tool for keeping order and maintaining an efficient court system." *In re Hoppock*, 849 So. 2d 1275, 1278 (Miss. 2003). "A court's power to maintain control over the proceedings before it is not grounded in its punitive jurisdiction, but in the necessary and inherent power to regulate its proceedings." *Knott v. State*, 731 So. 2d 573, 576 (Miss. 1999) (citing *In Re Lewis*, 654 So. 2d 1379, 1383 (Miss. 1995)).

¶10.    At the probation revocation hearing, the trial judge asked Spore three different times whether he had finished making his argument. After the third time, Spore stated that he had. Judge Weill then stated that "after I pronounce sentence I'm not going to hear further argument." Following this exchange, Spore offered additional argument. When he completed this, the judge then asked a fourth time "anything further?" Spore responded, "[n]o Your Honor."

¶11.    Despite multiple cautionary admonitions, Spore did what the judge warned him of, and what he agreed not to do, restarting his argument following the pronouncement of the

6

sentence. The court tried to stop Spore at least five times. Despite these requests to stop arguing and to sit down, Spore continued to speak and did not sit down. It was at this point that the judge found Spore in direct criminal contempt of the court and fined him $100.

¶12.    Spore claimed he needed to make his record and zealously represent his client. However, behavior that "'tends to bring the court into disrepute or disrespect'" is criminal contempt. *Purvis v. Purvis*, 657 So. 2d 794, 797 (Miss. 1994) (quoting *Lawson v. State*, 573 So. 2d 684, 686 (Miss. 1990)).  Spore's claim that he needed to make his record lacks merit, as he had ample opportunities to do so.  In *Mississippi Bar v. Lumumba*, Lumumba claimed that he needed to make a record and ignored instructions from the judge. *Mississippi Bar v. Lumumba*, 912 So. 2d 871, 878 (Miss. 2005). The Court recognized that "[Lumumba's] verbal argument at the hearing . . . was solely for the purpose of attempted persuasion of Judge Gordon [and disputing his announced ruling], not 'making a record.'" *Id.* at 878. The same could be said of Spore's attempts in the case sub judice.

¶13.    Additionally, while Lumumba claimed he was zealously representing his client, the Court of Appeals affirmed his criminal-contempt sanction and found his behavior was "disrespectful to the judge and disruptive to court proceedings." *Lumumba v. State*, 868 So. 2d 1018, 1021 (Miss. Ct. App. 2003).[5] In another case, this Court affirmed a charge of

---

[5]Lumumba's antics certainly were more egregious. In addition to refusing to stop arguing with the judge after repeated requests, he made overtures that justice was for sale. But his punishment also was more severe, as his sentence included three days in jail. It is also of note that the Bar suspended Lumumba for six months from law practice. *Mississippi Bar v. Lumumba*, 912 So. 2d 871, 889 (Miss. 2005).

criminal contempt where a lawyer simply had refused to apologize for stating alleged falsehoods before the court. ***In Re Smith***, 926 So. 2d 878, 885 (Miss. 2006).

¶14.    Mississippi Rule of Professional Conduct 3.5 directs a lawyer not to "engage in conduct intended to disrupt a tribunal." Miss. Rule Prof'l Conduct 3.5(d). The comment to the rule states that a lawyer's ability to "[r]efrain[] from abusive or obstreperous[6] conduct is a corollary of the advocate's right to speak on behalf of litigants." ***Id.*** at 3.5(d) cmt. Spore's announced purpose of diligently representing his client does not excuse conduct that violates Rule 3.5.

¶15.    Judge Weill also found that Spore had violated Rule 3.02 of the Uniform Rules of Circuit and County Court Practice. That rule states that "[a]ttorneys should manifest an attitude of professional respect *toward the judge*, the opposing attorney, witnesses, defendants, jurors, and others in the courtroom. (Emphasis added.) Spore failed to heed Judge Weill's requests and was clearly disrespectful before the court.

## CONCLUSION

¶16.    Because the record establishes beyond a reasonable doubt that Spore was guilty of direct criminal contempt for displaying willful, contemptuous conduct in the courtroom that interfered with the orderly administration of justice, the trial court's order is affirmed.

¶17.    **AFFIRMED.**

---

[6]*Webster's Dictionary* defines this as "marked by unruly or aggressive noisiness" and "stubbornly resistant to control." *Obstreperous*, Random House Webster's Unabridged Dictionary (2d ed. 1999).

8

**RANDOLPH, P.J., COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND KING, J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶18.     The record does not establish, beyond a reasonable doubt, that Greg Spore's post-ruling efforts to speak to Judge Weill were calculated to prevent the orderly administration of justice, nor does the record demonstrate that he was, in any way, disrespectful to the judge. Because I would reverse the judgment of the Circuit Court of the First Judicial District of Hinds County and render judgment in Spore's favor, I respectfully dissent.

¶19.     "A judge issues a citation for criminal contempt to vindicate the dignity and authority of the court. This is proper only when the contemnor has willfully, deliberately and contumaciously ignored the court, or the court's directive." *In re Smith*, 926 So. 2d 878, 887-88 (Miss. 2006) (citing *Premeaux v. Smith*, 569 So. 2d 681, 684 (Miss. 1990)). This Court has held that "[d]irect criminal contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice. Punishment for direct contempt may be meted out instantly by the judge in whose presence the offensive conduct was committed . . . ." *In re Smith*, 926 So. 2d at 888 (quoting *In re Williamson*, 838 So. 2d 226, 237 (Miss. 2002)). "More specifically, direct criminal contempt 'may consist of an open insult, in the presence of the court, to the person of the presiding justice, or a resistance to or defiance of power of the court.'" *In re Smith*, 926 So. 2d at 888 (quoting *Neely v. State*, 98 Miss. 816, 54 So. 315, 316 (1911)). Further, direct criminal contempt has been defined as "'[d]isorderly conduct in the court

9

room, or the use of violence, or threatening, or insulting language to the court, witnesses or counsel . . . .'" *Id.* "A contempt which is direct, in the immediate presence of the court, may be summarily punished without affidavit, pleading or formal charges." *In re Smith*, 926 So. 2d at 888-89 (citing *Varvaris v. State*, 512 So. 2d 886, 887-88 (Miss.1987)).

¶20.    Spore argues that nothing he "said or did can be reasonably calculated to prevent the orderly administration of justice." Spore continues that all he intended was to make a statement on the record in an effort to preserve an issue for appeal: "Mr. Spore was simply trying to make a record for appellate review. Judge Weill deprived him of the right; and therefore denied Mr. Spore the right to zealously advocate for his client's interest." In response, the State contends that "Spore's conduct during the hearing was a breach of courtroom decorum and was disruptive to the orderly administration of justice." According to the State, Judge Weill allowed Spore ample time to make his argument and "Spore was attempting to argue that the trial court applied an incorrect standard, which Spore neglected to include in his argument."

¶21.    The Mississippi Rules of Professional Conduct state that "[a] lawyer shall not . . . engage in conduct intended to disrupt a tribunal." Miss. R. Prof'l Conduct 3.5(d). The comment to the rule provides the following:

> The advocate's function is to present evidence and argument so that the cause may be decided according to law. Refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants. A lawyer may stand firm against abuse by a judge but should avoid reciprocation; the judge's default is no justification for similar dereliction by an advocate. An advocate can present the cause, protect the record for subsequent review and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics.

10

Miss. R. Prof'l Conduct 3.5(d) cmt. Here, Spore's post-ruling conduct provides what may be interpreted as an example of an advocate's attempt to "protect the record for subseqent review . . . by patient firmness" in the complete absence of "belligerence or theatrics" in a manner consistent with the letter and spirit of Rule 3.5 and its comment. Spore argues that he was merely engaging in zealous representation of his client by attempting to make a record for appellate review. Uniform Rule of Circuit and County Court Practice 3.02 provides that "[a]ttorneys should manifest an attitude of professional respect toward the judge . . . ." URCCC 3.02. All of Spore's efforts to speak to the court were couched in genteel and respectful verbiage in which he consistently addressed Judge Weill as "Your Honor."

¶22.    In the case of ***In re Smith***, a lawyer made the following remark, *inter alia*, in open court to the judge: "'I believe that the actions of this Court have been *so* reprehensible as to disgust any court.'" ***In re Smith***, 926 So. 2d at 880 (emphasis in original). The lawyer then "refused to genuinely apologize, despite being given multiple opportunities by the court to do so." ***Id.***  As a result, the trial judge found the lawyer in direct criminal contempt and had her jailed for five days. ***Id.*** This Court affirmed, holding that "the record unquestionably reveals, beyond a reasonable doubt, that Smith was guilty of direct criminal contempt . . . ." ***Id.*** at 890.

¶23.    In ***Mingo v. State***, 944 So. 2d 18, 32 (Miss. 2006), the defense lawyer sought to withdraw because of threats that had been made by unknown third persons against the defendant and his witnesses. When the trial court denied the motion, the defense lawyer refused to proceed with the trial. ***Id.*** at 33. The trial court then held the defense lawyer in

direct criminal contempt. *Id.* This Court affirmed, finding that "[d]efense counsel's refusal to continue with trial clearly constituted an action tending to prevent the orderly administration of justice" and that the "trial judge's decision to hold counsel in direct criminal contempt, while serious, was within his discretion." *Id.*

¶24.    In the present case, Spore's statements following Judge Weill's imposition of Cowards's sentence were responsive to that ruling: "[t]he Court made mention of the fact that Mr. Cowards, on his five-year non-adjudicated sentence, original sentence, served I believe six months in the RID[7] Program, successfully completed the RID program." Judge Weill reminded Spore that he had been given "ample opportunity" to make his argument and instructed him to "[p]lease sit down." When Spore responded that he was "simply trying to make my record," Judge Weill found him in direct criminal contempt.

¶25.    This case does not approach the degree of blatant disrespect shown by the lawyer's comments in *In re Smith*, nor does it demonstrate anything close to the degree of obstruction shown by the lawyer's refusal to continue with trial in *Mingo*. Furthermore, this Court routinely applies a procedural bar if the defendant's lawyer failed to interpose a contemporaneous objection to a judicial ruling. *Hall v. State*, 201 So. 3d 424, 428 (Miss.

---

[7] Mississippi Code Section 47-5-110(4)(a) previously allowed the Mississippi Department of Corrections to "by rule or policy and procedure provide the regimented inmate discipline program [RID] and prerelease service for offenders at its major correctional facilities . . . ." Miss. Code Ann. § 47-5-110(4)(a) (2011). That language no longer appears in the 2015 revision. *See* Miss. Code Ann. § 47-5-110(4)(a) (Rev. 2015). Mississippi Code Section 47-5-110.2 (Rev. 2015) provides that "[f]rom and after January 1, 2017, no person to be sentenced to the custody of the Mississippi Department of Corrections shall be ordered to a Regimented Inmate Discipline (RID) program by any court of this state."

2016) ("Hall has forfeited his right to argue these issues on appeal by failing to object contemporaneously below. Our rule is well-settled that a defendant's failure to object bars that defendant from raising an issue on appeal."); *Cox v. State*, 183 So. 3d 36, 50 (Miss. 2015) ("Once at the sentencing trial, defense counsel failed to renew any objections as to victim-impact testimony. Cox's claim is, therefore, barred from consideration."); *Moffett v. State*, 49 So. 3d 1073, 1101 (Miss. 2010) (internal citation omitted) ("We will not hold a trial court 'in error on appeal for a matter not presented to it for decision.'"). Spore's timely effort to lodge a contemporaneous objection was stifled by the court.

¶26.    The majority's analogizing this case to *Mississippi Bar v. Lumumba*, in which this Court imposed discipline upon an attorney for blatant misconduct, is misplaced. *Miss. Bar v. Lumumba*, 912 So. 2d 871, 889 (Miss. 2005). The lawyer in that case, appearing on behalf of a client in criminal post-trial motions before a circuit judge, said the following to the judge: "'Look, Judge, if we've got to pay for justice around here, I will pay for justice. I've paid other judges to try to get justice, pay you, too, if that's what is necessary.'" *Id.* at 875. "[The court] cited [the lawyer] for contempt, fined him $500, and ordered him to serve three days in the Leake County Jail," of which sentence the lawyer actually served one and one-half days. *Id.*

¶27.    On appeal, the Mississippi Court of Appeals held that:

> [The attorney's] behavior was done in the presence of the court and intended to embarrass or prevent orderly administration of justice. Further, it was both disrespectful to the judge and disruptive to court proceedings. We cannot fathom any situation that would warrant such behavior. This Court finds that the statements made toward the judge about how he can better get along with lawyers in the future, about the judge's "henchmen," about being proud to be

13

> thrown out of the courtroom, and about paying the judge for justice were made to embarrass the court or impede the administration of justice. This Court finds that the statements go far beyond zealous representation of one's client, and makes a mockery of the court and its proceedings.

*Id.* (quoting *Lumumba v. State*, 868 So. 2d 1018, 1021 (Miss. Ct. App. 2003)). The situation described in *Lumumba* does not resemble the situation before this Court today in any respect. Spore was courteous and deferential in his attempt to preserve his client's position for the record: "Your Honor may I please make my record[?]"

¶28. We cannot discern Spore's tone or manner of speaking, as Judge Weill was in a position to do. But the post-ruling comments do not appear from the cold record to have been calculated to prevent the orderly administration of justice. Spore appears not to have been presenting the same argument he had made prior to the ruling. Rather, the record reflects that Spore was attempting to advance a new argument that was responsive to the sentence the court had imposed, to which Spore seemed to be trying to interpose a contemporaneous and timely objection. Moreover, Judge Weill's specific order to Spore was that he was not to present further argument "on the sentencing *to be imposed*." (Emphasis added.) While the ruling relates to further argument about the anticipated sentence, temporally, Judge Weill's words did not preclude Spore from presenting argument *in response to* the sentence once it had been imposed. Taken literally, the judge's argument limitation applied to presentencing argument and not to postsentencing remarks by counsel.

¶29. The majority approves Judge Weill's finding of contempt based on his having disallowed a lawyer to present argument in response to a sentence. This could authorize a trial court, under the guise of maintaining courtroom decorum, to preclude a lawyer from

14

making a record-preserving contemporaneous objection to the sentence imposed. For example, if the sentence had been an illegal sentence, Spore would not have been able to make a contemporaneous objection without violating the court's directive that the lawyer not speak after the pronouncement of sentence.

¶30.     In *Slaymaker v. State*, 513 So. 2d 921 (Miss. 1987), for instance, the circuit court imposed a five-year sentence and also suspended the defendant's driving privileges for five years after the defendant was convicted of vehicular homicide. This Court affirmed the five-year sentence for vehicular homicide, but reversed and rendered the suspension of the defendant's driving privileges because "[t]he suspension of driving privileges is the exclusive province of the Commissioner of Public Safety." *Id.* at 922. The Court held that the circuit court "acted without statutory authority in suspending [the defendant's] driving privileges for five years and imposed a sentence exceeding the maximum penalty provided by law." *Id.* But for Slaymaker's lawyer's contemporaneous objection, the illegality of the suspension of driving privileges portion of the defendant's sentence would not have been properly before this Court.

¶31.     The majority—and the parties—agree that the order Spore is alleged to have violated is Judge Weill's prohibition of further argument after the sentence was pronounced. But the transcript of the proceedings shows that, after a brief exchange, Judge Weill had asked Spore to "[p]lease sit down." Spore responded, "Your Honor, I'm simply trying to make my record." It was at that point that Judge Weill found Spore in direct criminal contempt. The record is far from clear with respect to precisely what "order" Spore is accused of violating.

15

Was it Judge Weill's instruction that no further argument would be heard after the sentence was handed down? Or was it Judge Weill's directive that Spore "[p]lease sit down"? The record does not inform this Court whether, or at what point, if any, Spore sat down as ordered. The contempt order, itself, provides no clarification. Spore was found in direct criminal contempt "due to his failure to abide by *an* order of the [c]ourt . . . ." (Emphasis added.) This Court cannot, on *ab initio* review, find Spore guilty beyond a reasonable doubt of direct criminal contempt if we are unable to ascertain from the record what "order of the [c]ourt" he is accused of violating.

¶32.    Moreover, while the Mississippi Rules of Professional Conduct govern the behavior of lawyers in court, the Code of Judicial Conduct imposes reciprocal requirements of patience and courtesy upon the judges of this State. Canon 3B(4) states that, "[j]udges shall be patient . . . and courteous to . . . lawyers . . . with whom they deal in their official capacities . . . ." Miss. Code of Judicial Conduct Canon 3B(4). The comment explains that "[t]he duty to hear all proceedings is not inconsistent with the duty to dispose promptly of the business of the court. Courts can be efficient and businesslike while being patient and deliberate." Miss. Code of Judicial Conduct Canon 3B(4) cmt. Further, Canon 3B(7) states that "[a] judge shall accord to all who are legally interested in a proceeding, or their lawyers, the right to be heard according to law." Miss. Code of Judicial Conduct Canon 3B(7).

¶33.    For these reasons, I respectfully decline to join the majority.

**DICKINSON, P.J., AND KING, J., JOIN THIS OPINION.**

16